### ISAAC HEFFRON v. E. H. CUNNINGHAM ET AL.

#### No. 2821.

1.   **Bona Fide Holder of Negotiable Paper.**—One who in good faith takes by endorsement a negotiable promissory note before its maturity in payment of an existing debt, is a bona fide holder thereof.

2.   **Fact Case.**—See opinion for a memorandum of sale which in connection with other facts evidenced a completed contract, with unconditional promise to pay purchase money on the part of the purchaser and to convey title on the part of the vendor.

**3. Evidence—Deed.**—A deed absolute to land when once delivered to the purchaser can not be affected by parol evidence engrafting on it conditions inconsistent with its provisions, when no fraud or mistake is shown.

**4. Estoppel—Collateral Attack.**—One in whose favor a judgment is rendered in a suit brought in his name by counsel employed by him to sue can not be heard in a collateral proceeding to attack the jurisdiction of the court so long as he resorts to no means to correct or annul the judgment.

APPEAL from Galveston. Tried below before Hon. Wm. H. Stewart. The opinion states the case.

*Howard Finlay,* for appellant.—1. The transfer of a note for an antecedent debt does not deprive the maker of any defense he had against the original payee. The apparent exception in favor of a bank in order to keep up a line of credit by a regular depositor does not apply in this case. Goldsmid v. Bank, 12 Barb., 407; Rosa v. Brotherson, 10 Wend., 85; 3 Edw. Ch., 182; 6 Barb., 445; Vaterlien v. Howell, 5 Sneed, 441; Nichols v. Bate, 10 Yerg., 429.

2. A plea or answer seeking to vary or contradict a written contract, or substitute therefor another and different contract by parol, should be stricken out on demurrer. Sayles' Civ. Stats., art. 2245, Rule 20; 1 Greenl. on Ev., 275; Seiling v. Gunderman, 35 Texas, 554–56; Railway v. Pfeuffer, 56 Texas, 66; Hunt v. White, 24 Texas, 650; Wooters v. Railway, 54 Texas, 299; Rountree v. Gilroy, 57 Texas, 180; Belcher v. Mulhall, 57 Texas, 19; Cooper v. McCrimmin, 33 Texas, 390; Reid v. Allen, 18 Texas, 248; Smith v. Garrett, 29 Texas, 53; 14 Texas, 604; 29 Texas, 257; Bruner v. Strong, 61 Texas, 557.

3. The setting up a void judgment as part of their pleadings by Trueheart & Co. and Mary A. Wicks constituted no defense against defendant Heffron, and should have been stricken out. McCoy v. Crawford, 9 Texas, 353; Thouvenin v. Roderigues, 24 Texas, 468; Chambers v. Hodges, 23 Texas, 104; Witt v. Kaufman, 25 Texas Supp., 384; Hays v. Barrera, 26 Texas, 78; Bell v. Walnitzch, 39 Texas, 132; Hutchins v. Lockett, 39 Texas, 165; Buchanan v. Bilger, 64 Texas, 589; Gillenwaters v. Scott, 62 Texas, 670; Odle v. Frost, 59 Texas, 684; 54 Texas, 78; Id., 535.

4. No person is bound by a judgment rendered in a suit in his name which he had not authorized to be brought. Chapman v. Austin, 44 Texas, 133.

5. One defendant can not by admissions in her favor and adverse to the interests of her minor codefendants obtain a valid judgment against such minors. Bright v. Sampson, 20 Texas, 21; Teas v. McDonald, 13 Texas, 349; Willis v. Gay, 48 Texas, 463.

6. Parol evidence is not admissible to contradict and vary a written contract.

7. Time was the essence of the written contract between Heffron and

Trueheart & Co. as to when the title to the property was to be cleared up, and parol evidence was not admissible to assail it. Gober v. Hart, 36 Texas, 139; Hemming v. Zimmerchitte, 4 Texas, 159.

8.   The title to the property sought to be sold to Heffron not having been cleared up, he was entitled to a rescission of his contract as against all the parties.    York v. Gregg, 9 Texas, 85; Green v. Chandler, 25 Texas, 148; Demaret v. Bennett, 29 Texas, 262; Taull v. Bradford, 20 Texas, 261; Hurt v. McReynolds, Id., 595; Neel v. Prickett, 12 Texas, 137; Taylor v. Johnson, 19 Texas, 351.

9.   The contract of Heffron was executory, and the other parties to the contract were not in position to enforce it, on account of their laches and failure to perfect the title to the property.    Lawrence v. Simonton, 13 Texas, 220; Perry v. Rice, 10 Texas, 367; Littlefield v. Tinsley, 26 Texas, 358; 22 Texas, 259; Gober v. Hart, 36 Texas, 139; Kirkland v. Little, 41 Texas, 456.

*Wheeler & Rhodes* and *Davidson & Minor*, for appellees. — 1. The plaintiff Cunningham was a purchaser of the notes bona fide, for a valuable consideration, in the usual course of business, before their maturity, without notice of any equities, real or pretended, between Heffron and Wicks, and hence was entitled to recover in this suit without reference to the question, if any, of their validity as between Heffron and Mrs. Wicks, and without regard to any controversy between Heffron on the one side and Mrs. Wicks and Trueheart & Co. on the other.    Blum v. Loggins, 53 Texas, 136; Alstin v. Cundiff, 52 Texas, 464; Grenaux v. Wheeler, 6 Texas, 527, 528; Bank v. Evans, 36 Texas, 595; Swift v. Tyson, 16 Pet., 15, 19, 22; Carpenter v. Logan, 16 Wall., 272; Brown v. Spofford, 5 Otto, 474; Railway v. Bank, 12 Otto, 14, 59; Oates v. Bank, 10 Otto, 239, 251; 1 Dan. Neg. Inst., sec. 184; Wheeler v. Bank, 3 Ct. App. C. C., sec. 153; Ex Parte Richdale, 18 Law Rep. Ch., 409; In Re Palmer, 51 Law Rep. Ch., 462.

2.   The original contract between Heffron and Trueheart & Co., to the effect that Trueheart & Co. were to hold the notes and trust deed till judgment for plaintiff in the suit of Heffron v. A. Wicks et al., being verbal and entire, and a part only of it having been reduced to writing, the rule that parol contemporaneous evidence is inadmissible to vary the terms of a valid written instrument does not apply, and the court did not err in overruling the demurrers of defendant Heffron to the answer of Mrs. Wicks and Trueheart & Co. alleging the entire and verbal contract. 1 Greenl. on Ev., sec., 284a; Thomas v. Hammond, 47 Texas, 52; Miller v. Fetchthorn, 31 Pa. St., 260.

3.   The District Court of Galveston County being a court of general jurisdiction, the case of I. Heffron v. A. Wicks et al., No. 12,652, being a case in which it might by law take jurisdiction of the subject matter

and the person, that court having assumed to act in that case, and the judgment of that court in that case showing affirmatively by its recitals that its jurisdiction did attach, such judgment, in this collateral proceeding, imports absolute verity and is conclusive, and constitutes a valid defense against Heffron on the part of Mrs. Wicks and Trueheart & Co., and the demurrer of Heffron to their answers setting up such judgment was properly overruled.　　Murchison v. White, 54 Texas, 78; Guilford v. Love, 49 Texas, 715; Fitch v. Boyer, 51 Texas, 336; Williams v. Ball, 52 Texas, 603; Christman v. Russell, 5 Wall., 291.

4.　The recital in the judgment in cause No. 12,652, I. Heffron v. A. Wicks et al., that the plaintiff in that suit, Heffron, was represented by his counsel, imports absolute verity, and is conclusive upon Heffron, precluding him from claiming in this suit that his attorney obtained that judgment without his authority or knowledge.　　Dunman v. Hartwell, 9 Texas, 495; Laird v. Thomas, 22 Texas, 280; Cannon v. Hemphill, 7 Texas, 184; Baxter v. Dear, 24 Texas, 17, 21; Roller v. Wooldridge, 46 Texas, 495.

5.　Heffron having previously authorized the suit of I. Heffron v. A. Wicks et al. to be brought, and having subsequently ratified the action of his attorney in filing it and in obtaining judgment, by his acquiescence therein and by his failure to institute any lawful proceeding to have it annulled is bound by such judgment, even independently of its recital that he was represented by his counsel.　　Fleming v. Seeligson, 57 Texas, 524; Nichols v. Dibrell, 61 Texas, 539; McAnear v. Epperson, 54 Texas, 225.

6.　Whether, in point of fact, the minor defendants in that suit were or were not served with process, and were or were not represented by a guardian within this State, the recitals in that judgment to the effect that they had been personally served with process as required by law, and that they were represented by their duly and legally appointed guardian Mrs. Wicks, import absolute verity, and are conclusive upon all parties in this suit.　　Treadway v. Eastburn, 57 Texas, 209; Montgomery v. Carlton, 56 Texas, 365; Freem. on Judg., sec. 130; Hahn v. Kelley, 34 Cal., 407; Quincy v. Porter, 37 Cal., 458; Riley v. Lancaster, 39 Cal., 354; Drake v. Durenick, 45 Cal., 455; Gammell v. Rice, 13 Me., 400.

7.　The mere fact that the endorsement of Trueheart & Co. on the "earnest receipt" specified ninety days from May 4, 1885, within which time title was to be made clear by necessary action through court, did not *per se* render time essential, and it was competent to show by the surrounding circumstances that time was not of the essence.　　Adams Eq., 214; Edwards v. Atkinson, 14 Texas, 373; Bigham v. Carr, 21 Texas, 142.

8.　It does not lie in Heffron's mouth to say that the clearing up of the title, by action through court, within ninety days from May 4, 1885, was of the essence of the contract, in this, that the proposed action was to be

brought not by Mrs. Wicks or Trueheart & Co., but by Heffron himself. The delay was not attributable to any negligence on the part of Mrs. Wicks or Trueheart & Co., and after the ninety days had elapsed Heffron filed the suit, got the judgment, and thereby perfected his title.    3 Pom. Eq. Jur., sec. 1408; Cotton v. Ward, 3 B. Mon., 313; Woodson v. Scott, 1 Dana, 471.

9.    The plaintiff Cunningham having fully shown that he was a purchaser of the notes bona fide for a valuable consideration, in the usual course of trade, before their maturity, without notice of any equities, real or pretended, between Heffron and Mrs. Wicks, and there being no evidence whatever to the contrary, the court did not err in instructing the jury to find in favor of the plaintiff Cunningham for the gross amount of the three notes in evidence, with 8 per cent interest thereon from March 1, 1885.    Weathered v. Smith, 9 Texas, 625; Brown v. Spofford, 95 U. S., 478; Collins v. Gilbert, 94 U. S., 753, Commissioners v. Clark, 94 U. S., 285; Railway v. Tierney, 72 Texas, 312; Railway v. Faber, 63 Texas, 344; Eason v. Eason, 61 Texas, 226; Stringfellow v. Montgomery, 57 Texas, 349.

STAYTON, CHIEF JUSTICE.    On May 4, 1885, appellant executed to Mrs. Mary A. Wicks three negotiable promissory notes, each for $916.66, and due in one, two, and three years from date—notes, however, bearing date March 31, 1885.    These notes were given for the purchase money of a lot in the city of Galveston sold by Mrs. Wicks to appellant, and before their maturity were endorsed to E. H. Cunningham in part payment of advances made to Mrs. Wicks.

At the time Cunningham acquired the notes he had no notice whatever of claim, or fact which would give rise to claim, that they were not justly due to Mrs. Wicks.

The sale of the property was made through H. M. Trueheart & Co., representing Mrs. Wicks, and to evidence the terms of sale before deed and notes were delivered that firm executed a paper which is as follows:

"EARNEST RECEIPT.

"$200.                              GALVESTON, February 26, 1885.

"Received from Isaac Heffron two hundred dollars, earnest to close sale to him of lot 105, in section No. 1, Galveston Island, and improvements, at total price of $3250.    Terms of payment:  Cash (including this earnest), $500; one year and 8 per cent interest, $916.66; two years and 8 per cent interest, $916.67; three years and 8 per cent interest, $916.67; total, $3250.

"Title to be perfect, or to be made perfect, or this earnest to be refunded.    Deed at expense of seller.    Abstract of title at expense of seller, and all taxes to and including 1884.    Deed of trust at expense of

buyer, and taxes of 1885. Possession at once. Notes to bear interest from March 1, 1885, and payable sooner at buyer's option.

[Signed]                          "H. M. TRUEHEART & Co.,

"Agents for Mrs. M. A. Wicks."

On May 4, 1885, Heffron paid the further sum of $300, which completed the cash payment, executed the notes, gave a trust deed to secure their payment, and received a deed from Mrs. Wicks, when the following was endorsed on the paper above set out:

" We agree to hold the notes and deed of trust for ninety days from this date, and within which time title is to be made clear by necessary actions through court. May 4, 1885.

[Signed]                          " H. M. TRUEHEART & Co."

It appears from the evidence that the title to the property was examined by an attorney employed by Heffron, and that while facts were claimed and believed to exist that made it the separate estate of Mrs. Wicks, then a widow, the deed was made to her during the life of her husband, and it was feared that on this account claim that it was community property might at some time be set up by their children, then minors.

To remove this seeming cloud on the title it was agreed that Heffron, holding deed from Mrs. Wicks, should institute a suit against her and her children to clear the title, and it was in contemplation of this that the last statement above that title was to be perfected was made.

The evidence further shows that the argreement made by Trueheart & Co. to hold the notes for ninety days was made for the purpose of preventing the circulation of the notes until the contemplated suit should be decided, which all parties supposed could be done within ninety days from the time this last agreement was made.

Heffron, however, contends and stated on the stand that it was expressly agreed when he executed the notes if the title was not cleared within ninety days from that date the trade was to be considered at an end, and the money advanced to be repaid.

It is contended by Mrs. Wicks and by Trueheart & Co. that there was no such understanding, but that on the contrary the agreement was that the notes should remain in possession of Trueheart & Co. until the title was clear, but that the trade should stand whether the title was cleared within ninety days or not.

The District Court of Galveston County began its next term after May 4, 1885, on the first Monday in June, and the term next following the June Term began the first Monday in October, 1885. Owing to difficulty in fixing the locality of the proposed defendants in the suit to be brought by Heffron, Heffron's attorney filed suit, not to the June Term, but to the October Term, the suit being filed September 8, 1885. That suit was No. 12,652, the plaintiff being Isaac Heffron and the defendants

being the four minor Wicks children, who answered through their mother, the guardian of their estate, having so been appointed by the County Court of Galveston-County.

On October 10, 1885, in that cause, a trial was had, evidence was heard, and the judgment of the court was rendered divesting the title to the property out of the defendants and vesting it in Heffron, subject only to the payment by him of the purchase money notes made by him in favor of Mrs. Wicks, which are the same sued upon in the case at bar. Mrs. Wicks also filed an answer in her own right.

The following declaration is found in that judgment: "And it appearing to the court that the minor defendants Adeline Wicks, Celeste Wicks, Edward Wicks, and Louis Wicks had been personally served with process as required by law, and the said minor defendants having answered through their duly and legally appointed guardian, Mary A. Wicks, who answered for herself and in her own right as well as for said minors, and the court having heard the evidence in this cause," etc.

The judgment further declares that Heffron was "represented by his counsel."

It was shown that Mrs. Wicks was the duly qualified guardian of the estates of her minor children.

It is urged that appellee was not a bona fide holder of the notes sued on, and that he held them subject to any equities existing between appellant and Mrs. Wicks. This is upon the assumption that appellee received them in payment of an existing debt due to him by Mrs. Wicks.

The evidence does not justify the claim that the notes were received by appellee in payment of an existing debt.

After stating that he acquired the notes without notice of any claim that consideration for them had in any respect failed, or that they were not justly due, appellee stated that his "object was to furnish my sister (Mrs. Wicks) with means to purchase a home in Sewanee, Tennessee. When the notes were transferred to me I was at my plantation in Fort Bend County, Texas. * * * I advanced to my sister considerably more than the amount of the notes, and the notes were taken in part payment of said advances. They were transferred to me by H. M. Trueheart & Co., agents of Mrs. Mary A. Wicks, on her order, in the usual course of business."

This is the evidence bearing on the question, and the inference from it is that the money was advanced or paid in part on the faith of the notes. If, however, the notes had been received in payment of a part indebtedness appellee would be a bona fide holder.

While there is some conflict of authority on this question, it must be considered as settled in this State that one who in good faith takes by endorsement, before maturity, a negotiable promissory note in payment

of an existing debt, is a bona fide holder.   Greneaux v. Wheeler, 6 Texas, 528.

This is the rule recognized by the great weight of authority, and the grounds on which it stands have been too often stated to justify repetition.   Dan. on Neg. Inst., 184, 831, 832; 2 Rand. on Com. Paper, 463, 464, 995; Tied. on Com. Paper, 294.

It is contended that the endorsement made on memorandum of sale on May 4, 1885, evidences a contract that the sale was to be canceled if the title was not cleared within ninety days from that day.   Such is not the fair interpretation of its language, and when read in the light of the facts existing and construed in connection with the instruments executed at the same time, to so hold would do violence to the manifest intent of the parties.

At the time that endorsement was made appellant executed the notes and deed of trust to secure the purchase money, and received a deed from Mrs. Wicks.   These were all delivered, and none of them evidenced other than a completed contract, whereby without condition appellant promised to pay the purchase money and Mrs. Wicks conveyed the property.   The deed was delivered to appellant, and there can be no claim that he held it as an escrow, to take effect on condition not expressed in its face, as might have been shown to be the case had it been delivered to a stranger. Having been delivered to appellant, the grantee, it became an absolute conveyance, on which could not be engrafted by parol evidence any condition inconsistent with its terms.

In absence of fraud or mistake it can not be shown by parol evidence that the contract evidenced by it was not to have effect in case the title was not cleared within ninety days.   The notes and deed of trust are in the same condition.

If no writing existed other than the memorandum of February 25, 1885, and a subsequent agreement that title should be cleared within ninety days, a different case would be presented under the parol evidence.

The endorsement having been made at the same time the other papers were executed must be construed in connection with them, and if that had contained a clear declaration that the deed should be canceled and the notes surrendered if the title was not cleared within ninety days, then full effect should be given that part of the agreement; but an agreement to that effect can not be implied in the face of the legal effect of the other instruments, from the simple fact that it was agreed that the notes should be withheld from circulation for the time specified within which the title was to be cleared.

At the time the several instruments were executed the parties contemplated that a suit would be brought to clear the title, and as Mrs. Wicks then conveyed to appellant, it could not have been understood that the suit should be brought by her or in her name.

The evidence shows beyond controversy that when the original agreement was made it was understood that the deed and notes should be executed and the balance of the cash payment made, and that appellant would bring suit against the minor children of Mrs. Wicks, but there was some delay in the execution of the deed, caused by the absence of Mrs. Wicks from the State.

The agreement was express that the suit should be prosecuted by and in the name of appellant, through his own attorney, and at his own expense, except court costs, which were to be paid by Mrs. Wicks.

Under this state of facts the reasonable construction of the language contained in the instrument is that appellant would cause the suit to be prosecuted to termination within ninety days after May 4, 1885, and that during that time the notes should not be put in circulation.

If the parties had intended otherwise, it is difficult to understand why the notes and trust deed were delivered and the deed received. If the trade was to be annulled on the contingency that the title was not cleared within ninety days, why consummate it at all until the title was cleared?

The notes were not put in circulation until after the judgment clearing the title had been rendered, and the evidence shows that the attorney who represented Mrs. Wicks in the entire transaction agreed that they should not be, even if it required more than ninety days to obtain the decree.

In the transaction both parties were represented by attorneys, though Trueheart & Co. were the agents of Mrs. Wicks, authorized to make the contract to sell.

At the time the endorsement was made it is evident that both parties believed that the title could be cleared within ninety days, and had it been understood that this was necessary to preserve the rights of the parties, as they stood under the papers executed, this most probably would have been accomplished unless appellant had obstructed.

Appellant being the proper person to bring the suit after the property was conveyed to him, and having agreed to do so, could not take advantage of his own delay to avoid his obligation.

He brought no suit until after the ninety days had expired, and now claims that it was brought without his knowledge or consent by an attorney who is clearly shown to have been employed by him to institute and prosecute it.

The decree was rendered in his favor, and so long as he permits it to stand and takes no steps to set it aside he can not be heard to deny that it was prosecuted for him and by counsel employed by him.

There may have been irregularities in the proceedings through which the title was cleared, but if so he is responsible for them, and under the declarations contained in the decree he can not be heard in this collateral action to allege that the court did not have jurisdiction over all parties to it and full power to render the judgment clearing the title.

The court admitted the evidence of appellant to the effect that the agreement was that the trade should be canceled if title was not cleared within ninety days, as well as the opposing evidence which showed that no such agreement was made or understood to be made by the parties, and it is urged that the evidence offered by appellees on that point should not have been received, because in conflict with the endorsement.

If, for reasons before given, appellant was not precluded from showing that the absolute deed received by him was subject to be annulled for non-compliance with a condition not contained in it, it would have been proper for the court to have heard the parol evidence offered by both parties, and to have submitted to the jury whether such agreement as that alleged by appellant was made with a view to the adjustment of rights between himself and the defendants other than Cunningham; but for the reasons before given such testimony should have been excluded, and the court did not err in instructing the jury to find for Cunningham and the parties other than appellant.

There is no error in the judgment, and it will be affirmed.

*Affirmed.*

Delivered February 25, 1890.