**AYUB et al. v. SALOMAN.  (No. 1434.)**

(Court of Civil Appeals of Texas. El Paso. April 19, 1923. Rehearing Denied May 31, 1923.)

1. **Pleading** ⬅⟹403(3)—Where defenses are stated in petition, immaterial whether defendant pleads them.

In action on note defended on the ground that the consideration was illegal, where the affirmative allegations of the petition showed the character of the transaction out of which the note originated and the consideration upon which it was based, it was immaterial whether this defensive matter was pleaded by defendants.

2. **Bills and notes** ⬅⟹359—Cancellation of pre-existing debt held valuable consideration; "value."

Under Negotiable Instruments Act, § 25 (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—25), where indorsee in part payment for a note transferred to him, canceled and surrendered a note for $1,600 which he held against his transferor, this constituted value.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Value.]

3. **Bills and notes** ⬅⟹353—Giving nonnegotiable note held not giving value for note.

Where, as part of the consideration for the transfer of a note to him, indorsee gave an instrument signed by him reading, "Pay to the order of" the transferor "$1,300 in American money with * * * interest, if he fails to do it in time he is willing to pay all expenses," held, that such obligation was not a negotiable promissory note, as it contained no unconditional promise to pay, as specified in Negotiable Instruments Act, § 184 (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—184), hence was not the giving of value as respects the question of purchaser for value, especially where it was still owned by the transferor of the note, in view of section 54 (article 6001—54).

*On Rehearing.*

4. **Contracts** ⬅⟹101(2)—What law governs question of illegality stated.

The law of the place where the contract was made and where it is to be performed must both yield to the law of the forum if the former contravenes the plain public policy of the forum.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by R. Saloman against Miguel Ayub and others. From judgment for plaintiff, defendants appeal. Reformed and affirmed.

Z. L. Cobb, of Los Angeles, Cal., for appellants.

C. A. Kinkel, of Long Beach, Cal., and F. G. Morris, of El Paso, for appellee.

*Statement of Case.*

HIGGINS, J. This suit was brought by Saloman against the appellants, Ayub, Revilla, and Lopez, to recover a balance of $3,000 due upon a negotiable note in the sum of $4,000, payable in monthly installments of $500 each, the first installment being due March 3, 1922, payable to the order of E. Azar, dated at El Paso, Tex., February 3, 1922, and transferred by Azar to Saloman. The place of payment is not specified in the note.

The evidence discloses that the notes were given in part payment for certain shares of stock purchased by the makers of the payee in the "Club Latino-Americano," hereinafter called the Latin-American Club, a corporation organized under the laws of Mexico, domiciled and doing business in the city of Juarez, state of Chihuahua, republic of Mexico. The case is presented upon pleadings and a record somewhat different from cause No. 1435, Ayub v. Automobile Mortgage Co., 252 S. W. 287, this day decided. The right of a holder in due course also arises in this case, an issue which was not presented in cause No. 1435. The petition is in the ordinary form in actions upon notes.

In addition to the general denial the defendants set up that the note was given in part payment for shares of stock in the Latin-American Club, a corporation organized under the laws of Mexico, to operate a gambling place in Juarez, Mexico, under a concession granted by the Governor of the state of Chihuahua on August 18, 1921, permitting gambling, and under arrangements made from time to time, and intended to be made, with the Mexican authorities, permitting gambling in said club, as authorized in the concession, and additional thereto; that the stock representing the interest of Azar in the corporation stood in the name of others, and that Azar and Saloman knew that the club was organized to operate a gambling house

and for public gambling, and was so operated with a restaurant, bar, and other facilities to induce Americans and others from El Paso to patronize the bar and gambling; that at the time of the sale of said stock to defendants and the execution of the note the defendants were the owners of practically all of the stock in the corporation, and it was their intention and the purpose of Azar and Saloman, for the defendants, through said corporation, to operate public gambling in the club at Juarez, Mexico, and to pay the note out of profits arising from such gambling, by reason whereof the note and the contract of purchase and sale was immoral, against public policy, illegal, and void; that plaintiff was not a holder in due course.

By supplemental petition the plaintiff specially and in detail denied the special defenses set up by the defendants, and averred that at the time of the execution of the note and prior thereto the bar and liquor business and cabaret conducted by said club was legal and authorized in Juarez, Mexico, and if it was agreed between defendants and Azar that the note was to be paid from the profits of gambling plaintiff knew nothing about it; that at the date of the execution of the note and for several months prior thereto the Latin-American Club had been earning profits from its bar, restaurant, and cabaret, and that the club at the time of the execution of the note and the transfer of said stock had valuable assets consisting of real estate leases, improvements on its buildings, and the premises held under the leases and in restaurant, bar and cabaret furniture, fixtures, and equipment, and a large stock of valuable liquors, valued at approximately $55,000, so that such stock represented and was based upon tangible assets and values equal to the par value of the stock.

By trial amendment the defendant alleged that the plaintiff was not a holder in due course, for the reason that, if he paid anything for the note, which was denied, such payment consisted of the cancellation of a pre-existing debt from Azar to the plaintiff in the sum of $1,600 and the execution and delivery by Azar of his note for the sum of $1,300, which note has never been paid by Azar, and is still owned by him.

Defendant offered in evidence the Larrazola concession, which, according to the statement of facts, granted "the privilege to said Larrazola to establish a club or casino to be named Latin-American, in the city of Juarez, Chihuahua, Mexico, said club to be organized for the purpose of dispensing cold drinks, wines, liquors, beer, cigars, and tobacco, and also for the purpose of conducting various games, among others, to wit, poker;" also the articles of incorporation of the Latin-American Club, organized by virtue of such concession, the statement of facts showing:

"The object of said club, among other things, being for the purpose of conducting a restaurant, café, dance hall, dispensary of refreshments, wines, liquors, beer, and cigars and tobacco, and in appropriate departments there shall be played such games as are permitted by law and by the expressed terms of the aforesaid concession and none others."

The case was submitted to a jury upon special issues, which found:

(1) That plaintiff did not acquire the note subsequent to May 3, 1922. (In this connection it should be stated that the installments due March 3d and April 3d were paid at or before maturity.)

(2) That plaintiff at the time he purchased the note from Azar had no notice, actual or constructive, that same was given in consideration of stock in the Latin-American Club sold by Azar to the defendant Ayub.

(3) That at the time the note was executed and delivered to Azar it was not agreed between Azar and Ayub that the note should be paid from the profits of gambling to be conducted in the Latin-American Club in Juarez.

Judgment was rendered in favor of the plaintiff for the balance due upon the note.

### Opinion.

Upon the trial of this case the evidence related, in large measure, to the gambling operations of the Latin-American Club, and to the alleged agreement between Azar and the makers that the note was to be paid out of the profits arising from such gambling. The jury found against appellants upon the alleged agreement, and the evidence supports the finding. So far as concerns the gambling operations of the club it is unnecessary to determine whether that would affect the validity of the note, because, as between the original parties to the note, their rights are controlled by the ruling made in cause No. 1435, Ayub v. Automobile Mortgage Co. The allegations of the plaintiff's supplemental petition affirmatively show that the note was given in part payment for stock in the Latin-American Club, a corporation engaged in the liquor business in Juarez, Mexico, and whose assets in large measure consisted of a stock of intoxicating liquors.

[1] These affirmative allegations show the character of the transaction out of which the note originated and the consideration upon which it is based, and it is thus immaterial whether this defensive matter was pleaded by appellants. Keith v. Fountain, 3 Tex. Civ. App. 391, 22 S. W. 191; Osage, etc., v. Caulk, 243 S. W. 551; Mullin v. Nash-El Paso Motor Co., 250 S. W. 472, recently decided by this court, and not yet [officially] reported. Those allegations bring the case within the rule announced in the Automobile Mortgage Company Case so far as concerns the original parties to the notes. This defense, however, as between the original parties to the note,

is not available if Saloman is a holder in due course. Under the findings the only question which arises respecting his status as such is whether he is a purchaser for value.

[2] In part payment for the note Saloman canceled and surrendered a note for $1,600 which he then held against Azar. This constituted value under section 25 of the Negotiable Instrument Act (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—25), as well as under our decisions prior to the enactment of that law. Heffron v. Cunningham, 76 Tex. 312, 13 S. W. 259; Greneau v. Wheeler, 6 Tex. 515; Herman v. Gunter, 83 Tex. 66, 18 S. W. 428, 29 Am. St. Rep. 632.

[3] The balance of the consideration consisted of what Azar and Saloman designate as Saloman's note in favor of Azar dated April 27, 1922. The instrument is in some foreign language, and is thus translated by Azar, viz.:

"Pay to the order of E. Azar $1,300.00 in American money with eight per cent. interest, if he fails to do it in time he is willing to pay all expenses."

Upon the obligation evidenced by this instrument $250 has been paid by Saloman, and the obligation was still owned by Azar at the date of the trial on November 23, 1922.

It has been held that the negotiable note of the indorsee, given to the indorser in payment for a note purchased, constitutes the indorsee a purchaser for value. Wilson v. Denton, 82 Tex. 531, 18 S. W. 620, 27 Am. St. Rep. 908. But the instrument given by Saloman contains no unconditional promise to pay, and for that reason alone is not a negotiable promissory note. Section 184, Neg. Inst. Act, (Vernon's Ann. Civ. St. Supp. 1922, art. 6001 —184). It seems to partake more of the nature of a bill of exchange or check, but is incomplete as such because the drawee is not named nor otherwise indicated.

Under section 130 of the Negotiable Instrument Act (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—130) an instrument in form of a bill of exchange under certain circumstances may be treated by the holder as a promissory note, but this instrument cannot be so treated because of its incompleteness in the particular indicated. Furthermore, it is still owned by Azar, and section 54 of the Negotiable Instrument Act (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—54) provides:

"Where the transferee receives notice of an infirmity in the instrument or defect in the title of the person negotiating the same before he has paid the full amount agreed to be paid therefor, he will be deemed a holder in due course only to the extent of the amount theretofore paid by him."

Saloman, therefore, is entitled to protection as a holder in due course to the amount of $1,850 only which he has theretofore actually paid.

Those assignments which complain of the refusal to grant a new trial on the ground of newly discovered evidence are without merit, sufficient diligence not being shown. Tomlinson v. Noel (Tex. Civ. App.) 223 S. W. 1028.

In the state of the pleading the written transfer to Saloman by Azar of the note sued upon, which transfer was by indorsement in the usual form, fully established the title of plaintiff to the note, for which reason the court did not err in refusing to submit special issue A requested by defendants. Article 588, R. S.; Grounds v. Sloan, 73 Tex. 662, 11 S. W. 898; Schauer v. Beitel's Ex'r, 92 Tex. 601, 50 S. W. 931.

The judgment will be reformed and affirmed in appellee's favor for $1,850, with interest and attorney's fees as provided in the note, together with foreclosure of attachment lien as in the court below.

Reformed and affirmed.

### On Rehearing.

[4] It is insisted that the decision in cause No. 1435 should not be applied in this case because there is neither plea nor evidence that the sale of the stock was made in this country nor the note sued upon payable here. This is a distinguishing feature, and was so recognized at the time the decision was rendered, though it was not commented upon. This was regarded as of minor importance because the law of the place where the contract was made and where it is to be performed must both yield to the law of the forum if the former contravenes the plain public policy of the forum. The latter is ordinarily supreme in such cases.

It is asserted that this court—

"erred in holding that notwithstanding the plaintiff could and did make out his case without the aid of the illegal sale, if any, by suing on and introducing the note which imported a valuable consideration, the defendant might plead the illegal acts, if any, associated with the execution of the note sued on. * * * Counsel for appellee confidently relied upon this proposition so well sustained by authority, to answer every contention of appellant, and presented it in oral argument; but the court failed to treat the question at all in the opinion. We respectfully urge the court to meet this question, and either follow or overrule Oliphant v. Markham, 79 Tex. 543, 15 S. W. 569, 23 Am. St. Rep. 363, so that we may have at least the main question as to the availability of the illegality, if it exists as a defense where plaintiff did not have to rely on the illegal sale, if any, to make out his prima facie case.".

In the case mentioned Oliphant sued J. S. and T. W. Markham upon their note given for money loaned by the former to J. S. Markham, who used the same to pay margins due by the latter to Floyd & Co. upon future contracts between J. S. Markham and Floyd & Co. It had theretofore been held that such

future contracts were contrary to public policy. At the time Oliphant loaned the money he knew it was Markham's purpose to use the same in the manner stated. Upon the facts indicated Justice Gaines said:

"But it does not follow that every contract which is incidentally connected with or grows out of such a transaction is tainted with its vice. In the case referred to the doctrine was recognized 'that the test, whether a demand connected with an illegal act can be enforced is whether the plaintiff requires any aid from the illegal transaction to establish his case.'"

In that case the loan of the money and execution of the note sued upon was wholly collateral to the illegal contract. In the present case the note sued upon was not collateral or incidental to the objectionable transaction. It was part thereof. Its consideration arose directly out of the same. The rule announced by Judge Gaines is limited to contracts incidentally connected with or growing out of the vicious transaction. It has no application in a suit to enforce a contract directly connected with and based upon such a transaction.

According to appellee's theory illegality of consideration could never be interposed in defense of a suit upon a note simply because the plaintiff can make out a case by suing upon and offering the note in evidence. Such conclusion is not to be deduced from the authority relied upon by appellee. As illustrating the effect of the decision in Oliphant v. Markham, see the following: Futch v. Sanger (Tex. Civ. App.) 163 S. W. 597; Willard v. Knoblauch (Tex. Civ. App.) 206 S. W. 735. In the original consideration of this case Oliphant v. Markham was deemed so manifestly inapplicable to a suit upon a note originating directly in and based upon an objectionable transaction that it was not regarded as necessary to discuss the matter. But, in deference to the earnest insistence of counsel, our view upon the matter is indicated.

In the original opinion attention is called to the peculiar character of the $1,300 instrument given by Saloman to Azar in part payment for the note sued upon. Appellee says that we are not at liberty to resort to the evidence to determine whether this was a negotiable note because the defendant in its pleading set up that plaintiff "made payment by * * * and the execution of a note to the said Azar for $1,300 made payable after an installment of the note sued upon had matured."

Appellee is correct in its contention that in the state of the pleading it should be assumed that in part payment for the note Saloman gave a note, but we cannot accede to the further contention that it must also be assumed that the note so given was negotiable. Defendant simply pleaded that it was a note, and in this state of the pleading it was permissible to resort to the evidence to ascertain whether it was negotiable. The evidence as to its contents shows that it was not negotiable. This being the case, there is no occasion to recede from the view that under section 54 of the Negotiable Instruments Act Saloman is protected to the extent only of the amount theretofore paid.

Upon this phase of the case appellant in its motion for rehearing says:

"Because the court erred in holding that appellee was justified in law in refusing to pay the unpaid part of the $1,300 after having notice of the illegality, and could no longer be regarded as a holder for value of so much of the $4,000 as was paid for by the unpaid part of the $1,300 when appellee received notice of illegality. This error arises from a misunderstanding by the court of the meaning of the words in section 54 of the Negotiable Instruments Act, "he will be deemed a holder in due course only to the extent of the amount theretofore paid by him."

"The court assumed without question or discussion that the giving of a promissory note was not 'payment' within the meaning of the law. The constructions elsewhere of that language in states from which we took this law show that the holdings have been that the giving of a check or promissory note in payment in part or in whole of the purchase price of another note purchased is a 'payment' within the meaning of this act. It is held by the cases that the maker of a note given in payment of another one is bound at all events to pay his note notwithstanding he may have learned of defenses to the note he bought before he paid the note he executed for the purchase price, and that the giving of such a note is not as to the maker a conditional payment, but is only so as to the payee. The execution of such a note in part payment for another note is as much a payment for such other note as if it had been paid in cash.

"Counsel for appellee are unable to understand why the court did not treat this question, why the main question here was assumed without question against appellees when they presented such a line of authorities as should have merited some notice thereof. Possibly the court overlooked or did not appreciate the point made. Appellant's sixth proposition (page 10 of brief) presented this point, and cited Wilson v. Denton, 82 Tex. 531, 18 S. W. 620, 27 Am. St. Rep. 908, Miller v. Mark, 46 Utah, 257, 148 Pac. 412; Matlock v. Scheuerman, 51 Or. 49, 93 Pac. 823, 17 L. R. A. (N. S.) 747; Adams v. Soule, 33 Vt. 538."

This court did not overlook the point made, but evidently did not appreciate it, and still fails to do so. The reason for this is that each of the cases cited dealt with negotiable notes or checks given by the purchaser, whereas the instrument given by Saloman is nonnegotiable, and remains in Azar's hands.

Referring to the cases relied upon by appellee:

In Miller v. Mark and Matlock v. Scheuerman negotiable checks were given, and such

cases rest upon principles different from those applying in the case of a negotiable note given by the purchaser. This is expressly recognized in Miller v. Marks.

In Wilson v. Denton the purchaser gave his negotiable note, and it had been negotiated by the payee.

Adams v. Soule was decided in 1860, and is not in harmony with later rulings of the Supreme Court of the United States and of Texas, to the effect that the protection accorded an innocent holder of negotiable paper should not be extended further than is necessary to his complete protection and thereby permit the holder to pervert the equitable principles upon which it is based for the purpose of aiding one party to a commercial instrument in obtaining an advantage over the other. Dresser v. Missouri, etc., 93 U. S. 92, 23 L. Ed. 815; Van Winkle Gin Co. v. Bank, 89 Tex. 147, 33 S. W. 862; Wright v. Hardie, 88 Tex. 657, 32 S. W. 885.

Section 54 of the Negotiable Instruments Act is a recognition of the just rule announced in the last three cited cases, and applies to the case here presented of a purchaser who, in part payment for the note sued upon, gave the seller his nonnegotiable obligation which was still owned by the seller.

Appellant has also filed a motion for rehearing. The only feature thereof deemed necessary to be discussed is the fourth ground, which is to the effect that it was error to hold appellee protected to the extent of the payment of $250, made by him on his obligation to Azar because such payment was made subsequent to the filing of this suit, and he was therefore charged with notice of the defenses herein. The evidence discloses that the payment was made as follows: On July 27, 1922, $100; on August 26, 1922, $100; on September 27, 1922, $50.

The original answer of the appellant was not filed until September 5, 1922. In this answer the only attack made upon the validity of the note related to an alleged agreement between the appellants and Azar that it should be paid out of the proceeds of gambling. The mere fact that appellee was compelled to sue the note did not charge him with notice of any infirmity therein, so there was nothing to charge him with notice when the payments of July 27th and August 26th were made. When he made the payment of September 27th the only infirmity asserted in the answer then on file related to a defensive issue which the jury found against appellant. The intoxicating liquor feature of this case had not been injected into it at the time the last payment was made, and that is the feature upon which the ruling of this court is based. Therefore the record does not disclose notice to appellant of the fatal infirmity in the note at the time he made the payments aggregating $250.

For the reasons stated, both of the motions for rehearing are overruled.