**AYUB et al. v. AUTOMOBILE MORTGAGE CO.   (No. 1435.)**

(Court of Civil Appeals of Texas. El Paso. April 19, 1923. Rehearing Denied May 31, 1923.)

**Intoxicating liquors ⬦⟶327(3) — Notes given for stock in Mexican corporation engaged in liquor business held illegal.**

Since the purchaser of corporate stock becomes in equity the owner of a fractional indivisible interest in the corporate assets, the sale of stock in a Mexican corporation engaged in retailing intoxicating liquor in substance constituted a sale of the intoxicating liquor owned by the corporation, and, such sale being the consideration in part for notes for the stock, the notes were illegal, as arising out of a transaction contravening public policy, as evidenced by Acts 36th Leg. 2d Called Sess. (1919) c. 78 (Vernon's Ann. Pen. Code Supp. 1922, art. 588¼ et seq.), as to intoxicating liquors.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge. ·

Action by the Automobile Mortgage Company against Miguel Ayub and others. Judgment for plaintiff, and defendants appeal. Reversed and rendered.    ·

Z: L. Cobb, of Los Angeles, Cal., for appellants.

C. L. Galloway and Paul D. Thomas, both of El Paso, for appellee.

### Statement of Case.

HIGGINS, J.   This suit was brought by appellee against the appellants, Miguel Ayub, Ben Revillá, and Manuel F. Lopez, to recover upon two negotiable promissory notes executed by appellants to the order of Harry Miller and Geo. Sadlo, dated February 1, 1922, one for the sum of $2,000, due in 60 days; the other in the sum of $3,000, due in 4 months. The notes were dated and payable at El Paso, Tex., and were assigned by the payees to the appellee.

The evidence discloses that the notes were given in part payment for certain shares of stock purchased by the makers of the payees in the "Club Latino-Americano," hereinafter called the Latin-American Club, a corporation organized under the laws of Mexico, domiciled and doing business in the city of Juarez, state of Chihuahua, republic of Mexico.

The defendants answered, in substance setting up that the notes sued upon were given in part payment for stock in said corporation, which was organized by said Lopez, Revilla, Miller, and Sadlo, under the laws of Mexico, to acquire a concession granted by the Governor of Chihuahua to Larrazola for the purpose, among·other things, of maintaining a

restaurant, café, dance hall, and bar for the sale of liquors, wines, and beer, and of operating games of chance permitted by the laws of Mexico, including poker and other forms of gambling; that said organizers held all of the stock, while club membership was available to the general public; that the club acquired a lease upon and option to buy certain real estate in Juarez which it improved at great expense for the purpose of making the place attractive and inducing the public thereto, and other expenditures were made for furniture and equipment and a stock of liquor, wines, beer, and provisions; that from its organization until February 1, 1922, said club operated said business and issued club membership freely to the general public desiring to patronize the same, and operated the restaurant, dance hall and other facilities without substantial profit, and usually at a loss, for the purpose of attracting public patronage to the bar and gambling; that on February 1, 1922, it was the understanding of the parties that the operation of the business was unprofitable, and the stock of no substantial value except as contingent upon gambling operations and the sale of liquors, wines, and beer upon a larger scale, and that the $8,000 cash paid at the time of the purchase exceeded the value of the stock, and its proportionate interest in the assets of the corporation and the notes were to be paid from profits accruing from gambling operations and the sale of liquors, wines, and beer under a gambling concession which the parties anticipated defendants would obtain from the Mexican authorities; that the sale of liquors, wines, and beer is prohibited by the Constitution and laws of the United States and this state, and gambling is prohibited by the laws of this state, and, though carried on in Mexico, and regardless of whether they were legal or illegal there, they are immoral and repugnant to the public policy of the United States and of this state, and therefore, the notes were based upon an illegal consideration; that the consideration for the notes had failed because the cash paid exceeded the proportionate value of the shares of stock in the net physical assets of the corporation, and for the reason that the defendants did not obtain the concession anticipated, and operated at a loss, and became bankrupt; that the stock was purchased and the notes executed and delivered on February 1, 1922, in El Paso, Tex., and that the plaintiffs acquired the same with notice of their illegality.

By supplemental petition the plaintiff denied the allegations of the answer, and set up that, if at any time gambling was conducted by the club, it was operated in accordance with the laws of Mexico where the club had its domicile, and was at no time operated so as to infringe upon or conflict with the laws of the United States or of this state; that the notes were given in consideration for stock sold in a corporation legitimate under the laws of Mexico, and the stock was represented by property equal to or greater in value than the face value of the stock, and that the sale of the wines, liquors, etc., owned by it was legitimate under the laws of Mexico.

Upon trial the court rendered judgment in favor of the plaintiff for the amount due upon the notes in full. The case having been tried without a jury, the trial court filed findings and conclusions, a condensed statement of which is as follows:

(1) That the contract for the purchase of the stock was made in El Paso, Tex., and the notes executed and made payable there. That the property of the Latin-American Club and its stock was situated in Juarez, Mexico, and its business conducted there.

(2) That there was no agreement between the parties that the notes were to be paid out of the proceeds of gambling, or the profits or income of the Latin-American Club, or any other particular fund.

(3) That on February 1, 1922, the concession granted to Larrazola had theretofore been revoked by the authorized authorities.

(4) That the Larrazola concession did not authorize gambling games, but Miller and Sadlo considered that the concession gave the club the right to operate a poker game until the date the concession was revoked.

(5) That poker was operated by the club on its premises from November 14, 1921, to December 26, 1921, and from January 20, 1922, until on and after February 1, 1922, and the profits from the operation of said game accrued to the club.

(6) That the operation of the games of poker from November 14, 1921, to December 26, 1921, was without lawful authority, and from January 20, 1922, until on and after February 1, 1922, by illegal permits from the local authorities; that the actual value of one-half of the physical assets of the club at the time of the sale of the stock was $13,000, of which amount the club's stock of wines, liquors, and beer was valued at $6,427.93, and that the $13,000 paid and agreed to be paid by the defendants was in consideration of such assets, and that no right, or claimed right, to operate poker games or other gambling was any part of the consideration for the notes sued upon.

(8) That in purchasing the stock defendants were actuated by the hope that a gambling concession would thereafter be obtained.

(9) That the concessions contained in the Larrazola concession were lawful in the state of Chihuahua.

(10) That the club operated a bar on the premises and sold liquor, wines, and beer for the purpose of profit from the date of its organization until on and after February 1,

1922, and the profits accrued to the club, and that such operation was in accordance with the Larrazola concession until such concession was revoked about December 26, 1922, and thereafter operated under and in accordance with the laws of Mexico.

(11) That the income of the club in large measure was derived from the bar and the operation of the poker game.

(12) That the note in the hands of the plaintiffs was subject to any defense that could be urged against the original payees.

This last finding was based upon agreement of counsel.

Based upon these findings the court concluded that the fact that the bar, liquor business, and liquor on hand was a considerable part of the assets of the Latin-American Club, and entered into the consideration for the notes sued upon, did not invalidate the notes, because the club and all of its assets were situated in Juarez, Mexico, where the business was legal, and that the plaintiff was entitled to recover upon the notes sued upon.

Supplementing the findings of fact of the trial court we find from the undisputed evidence that the capital stock of the Latin-American Club sold by Miller and Sadlo to the defendants constituted 50 per cent. of the entire capital stock of the corporation; that membership cards in the club were extended to the public generally, it being denied only to persons considered by the club to be of bad character; that in the articles of association it was stipulated that it was organized by the authority of the concession granted to Larrazola. The translated copy of the articles of association contains the following provisions:

"Second. The object of said club or association will be to secure the physical culture of its members by means of open-air games, such as golf, croquet, tennis, and all kinds of open-air physical sports and exercises, to which end the aforesaid 'Club Latino-Americano,' at the proper time, and in accordance with the provisions in this connection contained in the concession made by the government, shall acquire an appropriate site for the purposes of its organization, and there shall be erected thereon an appropriate building for that purpose, all of this at an expense of not less than 200,000 pesos, Mexican national gold. In said building, as well as in the building now being temporarily used for that purpose, the said club shall maintain a restaurant, café, dance hall, gymnasium, library, a dispensary of refreshments, wines, liquors, beer, and cigars and tobaccos, and in appropriate departments there shall be played such games as are permitted by law and by the expressed terms of the aforesaid concession and none others. In addition to the foregoing the said club shall devote its energies to the cultivation of friendly social relations among its members and the development of all means of recreation and sports that may be permitted by the laws of the state and municipalities. The club shall have power to acquire, own and possess in its own name all kinds of real and personal property that may become necessary for the maintenance, improvement and support of an institution of this kind; also to sell, hypothecate and generally to alienate in any manner the real and personal property of the club having first had the consent and authorization thereunto of the general assembly. * * *

"Fifth. The shares of stock shall be nominative and indivisible and may not be transferred without the previous approval of the general assembly of stockholders, and to that end written notice shall be given to it of the transfer desired to be made of said stock which said transfer must be registered in the appropriate book of the society. All certificates of stock shall be signed by the president, secretary and the treasurer of the board of managers. * * *

"Tenth. Each stockholder has the right to participate in the profits of the association in the same proportion that the value of his stock bears to the total capital stock of the club, and in like manner will have the right to participate in the dissolution thereof; it being understood, however, that the portion of capital stock already paid in as stated at article 4 hereof shall be paid back in the manner that the general assembly of stockholders may determine. The general assembly shall also determine what percentage of the profits shall be set aside for the creation of a reserve fund, which said percentage may be increased or diminished as, in the judgment of the assembly, the interests of the club may require, and the balance shall be distributed as dividends among the stockholders. * * *

"Thirty-Eighth. In case of the dissolution of the club the general assembly shall appoint two competent persons as receivers of all property and assets of the club and they shall proceed to the liquidation of the same; they shall be given full power to convert into cash all property and assets of whatever character they may be, to effect before a notary all writings of conveyance of title thereto and all such other documents as may become necessary for the final liquidation of the club's affairs. After all the liabilities of the club and expenses of liquidation and dissolution have been fully paid, the balance, if any there be, shall be distributed pro rata among the stockholders according to their respective interests in the club. * * *"

## Opinion.

Without discussing in detail the various assignments and propositions presented by appellant, we will confine the opinion to what we conceive to be the controlling questions in the case.

The notes sued upon were given in part payment for shares of stock in a Mexican corporation engaged in the retail liquor business, and whose assets in large measure consisted of a stock of wines, liquors, and beer. Under the organic law of our nation the sale of intoxicating liquors within the United States and all territory subject to the jurisdiction thereof for beverage purposes is prohibited. There is a similar provision in the Constitution of Texas. By virtue of these constitutional provisions penal laws have been enact-

ed by the state and nation prohibiting the sale of intoxicating liquors except for limited purposes under stringent regulations. Chapter 78, Acts 36th Leg. 2d Called Sess. (Vernon's Ann. Pen. Code Supp. 1922, art. 588¼ et seq.) makes it unlawful for any person "directly or indirectly" to sell the same. In view of these laws it cannot be doubted that notes given in payment for intoxicating liquor, if sold and delivered within this state, would be tainted with illegality, and uncollectible.

These laws evidence and embody a distinctive public policy which requires the courts of this country to refuse recognition to any transaction or enforcement of any contract, in direct or substantial violation of their terms, even though such transaction or contract arose in another country by the laws of which it is valid. This conclusion follows upon the well-settled rule that a contract which contravenes good morals or the public policy of the forum as evidenced by its laws will not be countenanced in the courts regardless of its validity under the lex loci contractus or lex situs. The established public policy of the forum is supreme, and will not be relaxed on the ground of comity to enforce contracts which contravene such policy, even though such contracts are valid where made.

The question thus arises whether the transaction in which these notes originated contravenes our public policy relative to sales of intoxicating liquor. The sale of capital stock of a corporation whose assets in whole or in part consist of intoxicating liquor is not a direct sale of the liquor itself. This is true because the legal title to the assets of the corporation is vested in the legal corporate entity, and not in its stockholders. While the legal title to the assets is thus vested in the corporation, the stockholders are entitled to the profits arising from the corporate business which may be made and distributed from time to time, and upon the dissolution of the corporation they are entitled to the assets after its debts have been paid. The title of the corporation is in the nature of a trustee, the stockholders being the beneficiaries and equitable owners. Shares of corporate stock are regarded as personal property, and are owned by the stockholders; but they are also the written evidences of the equitable interest and title of the stockholders in the corporate assets. The purchaser of corporate stock becomes in equity the owner of a fractional indivisible interest in the corporate assets. The sale of corporate stock passes to the purchaser the seller's interest in the corporate assets. Barrick v. Gifford, 47 Ohio St. 180, 24 N. E. 259, 21 Am. St. Rep. 798; Gamble v. Dawson, 67 Wash. 72, 120 Pac. 1060, Ann. Cas. 1913D, 501; 7 R. C. L. 304; Fletcher, Cyclopedia Corporations, §§ 25, 3429, 3433; Thompson, Commentaries on Law of Corporations, § 1071.

The status of a stockholder in the Latin-American Club towards the assets of the corporation seems to differ in no material respect from the rules announced above. This is shown by the tenth and thirty-eighth articles of association. We are therefore of the opinion that the sale by Miller and Sadlo to appellants of stock in the Latin-American Club was, in substance, a sale of an interest in a stock of intoxicating liquors and a retail liquor business. While the sale of the stock necessarily must have been finally consummated in Mexico by registration of the transfer upon the books of the corporation, this was but a formal matter. In view of the fact that the notes originated in a transaction which in effect and substance constituted a sale of intoxicating liquor, that such sale in part was the consideration for the notes, that the contract of purchase was made in El Paso, and the notes executed and made payable there, we are of the opinion that the validity of the notes is to be governed by the laws of this country, and recovery denied because they are based upon and arise out of a transaction which contravenes our public policy. In making this ruling we are not unmindful of the fact that the Latin-American Club had other assets, the value or which entered into and formed a part of the consideration; but the taint arising from the liquor feature is inseparable, and vitiates the whole. Seeligson v. Lewis, 65 Tex. 215, 57 Am. Rep. 593.

For the reasons indicated, the judgment is reversed, and rendered in favor of appellants.

### On Rehearing.

Appellee has filed a most able argument in support of its motion for rehearing, to which due consideration has been given.

It is earnestly insisted that the transaction and contract in question is not malum in se, is not contrary to good morals, and does not injuriously affect the rights of citizens of this state; therefore the rule of public policy upon which the decision is based has no application. The rule has been most frequently applied, perhaps, in cases of that character, but it is not limited thereto. It applies also to contracts directly originating in and based upon transactions which contravene the positive policy of the law of the forum. See 5 R. C. L. title "Conflict of Laws," §§ 5, 31, and 41, and authorities there cited; note in 46 L. R. A. (N. S.) 651. In this connection see, also, Consolidated Garage Co. v. Chambers, 111 Tex. 293, 231 S. W. 1072; Crosby v. Huston, 1 Tex. 203. It would be difficult to imagine a policy more plainly manifested than that evidenced by our constitutional and statutory provisions, both state and national, relating to the sale of intoxicating liquor. This policy makes it the duty of our courts to deny enforcement to any contract directly based upon a trans-

action in substantial conflict with these laws, regardless of its validity elsewhere.

In support of its contention that this court erred in holding that the sale of the corporate stock, in substance, constituted a sale of an interest in intoxicating liquors and a retail liquor business, many authorities are cited to the effect that title to corporate assets is vested in the corporation, and not in the stockholders. We, of course, recognize that the legal title is so vested, and our opinion is not to be construed as in any wise conflicting with that well-established principle.

Still adhering to the view that the correct disposition has been made of this appeal, the motion for rehearing is overruled.