[No. 9779. Department Two. January 29, 1912.]

THOMAS D. GAMBLE, *Administrator etc., Appellant,* v.

THOMAS DAWSON *et al., Respondents.*[1]

DOMICILE — CHANGE — ABANDONMENT — INTENT—EVIDENCE—SUFFICIENCY. The evidence is insufficient to show abandonment of domicile in this state, established here for many years, where the deceased returned to his native state owing to ill health, and remained there 18 months until he died, but intending to return to this state if he recovered his health, as shown by his letters and the fact that he did not sell his home or furniture, and other circumstances, although he bought a small place in his native state.

HUSBAND AND WIFE — COMMUNITY PROPERTY — ADMINISTRATION— VENUE. The widow is entitled to have administration of community personal property in the county of the domicile of the deceased at the time of his death.

CORPORATIONS—STOCK—SITUS OF DOMESTIC STOCK IN POSSESSION OF NONRESIDENT—ACTIONS—VENUE—JURISDICTION. The claimant of corporate stock is entitled to bring an action to recover the same at the place where the company is incorporated, notwithstanding the certificates are in the possession of a nonresident.

[1]Reported in 120 Pac. 1060.

PROCESS—SUBSTITUTED SERVICE—NONRESIDENTS—ACTION AS TO COR-
PORATE STOCK. Substituted service outside the state upon a non-
resident stockholder of a domestic corporation is constructive notice
and gives the court jurisdiction of an action to determine the title
to the stock, and issuance of an attachment is unnecessary; since
the court has jurisdiction of the *res*, and the corporation is pro-
tected by the decree, Rem. & Bal. Code, § 3693, providing that no
transfer of stock shall be valid until it is entered on the books of
the company.

Appeal from a judgment of the superior court for Spo-
kane county, Carey, J., entered December 27, 1910, upon
findings in favor of the defendants, dismissing an action by
an administrator to secure possession of corporate stock and
personalty as property of the estate. Reversed.

*John A. Peacock* and *F. E. Langford*, for appellant.

*R. E. Porterfield, John M. Gleeson*, and *Joseph F. Morton*,
for respondents.

DUNBAR, C. J.—This is an action in equity. Appellant is
a duly appointed, qualified, and acting administrator of the
estate of James Dawson, deceased, in the state of Washing-
ton, appointed by the superior court of Spokane county. The
defendant Dawson is a resident of Maryland, and is the ad-
ministrator of the estate of James Dawson, deceased, in the
state of Maryland. From 1889 to the time of his death, the
deceased, James Dawson, and his wife, Henrietta Dawson,
from the time of their marriage in 1895, resided in Spokane
county, until they went to the state of Maryland, where they
resided about eighteen months, and until James Dawson died
in January, 1909. Henrietta Dawson, his wife, then re-
turned to Spokane county. It is the contention of the ap-
pellant that the residence of James Dawson and his wife was
in Spokane county at the time of Dawson's death, and that
their sojourn in Maryland was temporary and did not dis-
turb their legal residence in Spokane county. This question
will be discussed hereafter.

The other defendant, the International Coal & Coke Com-

pany, is a domestic corporation, with its place of business in Spokane county. James Dawson, at the time of his death, was the owner and holder of five thousand shares of stock in the International Coal & Coke Company, together with all the dividends accrued and to accrue thereon. This action by the administrator asks for a decree of the court that the five thousand shares of stock in the International Coal & Coke Company, together with all dividends accrued thereon, be decreed the community property of said James Dawson, deceased, and his widow, Henrietta Dawson, and as such be subject to the jurisdiction of the superior court of Spokane county, and subject to administration in this jurisdiction; that the defendant company be ordered and decreed to make no transfer of said five thousand shares except to appellant, and to transfer the same to the appellant upon his request so to do, and to pay appellant all dividends accruing thereon which it might have in its possession; directing the cancellation of said certificates representing said five thousand shares of stock, and that a new certificate issue to appellant for said shares. The complaint alleged that, a short time prior to the time Henrietta Dawson left Maryland, she placed in possession of defendant Thomas Dawson for safe keeping, among other things, the certificates for the five thousand shares of stock mentioned above, and that Dawson had refused to return said certificates of shares of stock to Henrietta Dawson or to this complaining administrator; that dividends have accrued on said five thousand shares in the hands of the defendant corporation, a demand for which dividends had been made by the plaintiff and had been refused; demands the possession of the five thousand shares of stock from the said Thomas Dawson, the cancellation of the certificates by the defendant company, and the issuance of another certificate as stated above. There are other allegations in the complaint concerning $1,700 worth of personal property in the state of Maryland which was alleged to be in the possession of the defendant Thomas Dawson, and a demand was

made for a return of the said property; but we will not
notice that demand further, for the property was plainly
within the jurisdiction of the courts of the state of Mary-
land, and not subject to the jurisdiction of this state.

The defendant Coal & Coke Company answered, in sub-
stance, that the shares of stock had been issued, as alleged
in the complaint, to said James Dawson; that there had
been dividends declared which the company was ready and
willing to disburse and turn over to the proper claimant
therefor; but that, inasmuch as there was more than one
claimant, it refused to recognize either claimant until it was
determined by the court who the proper claimant was. The
defendant Dawson made a special appearance denying the
jurisdiction of the court over his person, the service having
been made personally upon him in the state of Maryland.
The court overruling his plea to the jurisdiction, he an-
swered, alleging, among other things, that all the property
which was the subject-matter of this action was, at the time
of the commencement of this action and ever since has been
and now is, located in the state of Maryland outside of the
state of Washington; that no writ of attachment, garnish-
ment, order or process of any kind whatsoever has been is-
sued out of this court, or at all, or levied upon any of the
property mentioned in said complaint, whereby said prop-
erty could or might be brought within or under the jurisdic-
tion of the court; denied many of the allegations of the com-
plaint; but alleged, that James Dawson died, intestate, in
Montgomery county, in the state of Maryland; that he was
a resident of said state and county and had his domicile
therein at the time of his death, and left the personal and
real property mentioned in the complaint; that on the 9th
day of February, 1909, the defendant was appointed admin-
istrator of the estate of said James Dawson, duly qualified as
such administrator, and letters of administration upon said
estate were duly issued to him, and that he thereafter entered
upon the discharge of his duties as such administrator, and

ever since has been and now is acting as such administrator under such appointment; that the said Henrietta Dawson, after his appointment, delivered into his hand as such administrator, acting in his official capacity and not otherwise, all the personal property mentioned in the complaint; that he proceeded to administer upon said estate; that he never had and does not now have or claim the possession of any of the property mentioned in said complaint in his own person, but only as the administrator of the estate of James Dawson, deceased.

On the subject of the right of Henrietta Dawson, the wife, to the shares of stock which are the subject of this action, Thomas Dawson answered that, prior to the marriage of the said James Dawson and Henrietta Dawson, he, together with Henry A. Dawson, was seized and possessed of a tract of land in Whitman county, Washington, that the same was owned equally between them, and for convenience of transfer was held in the name of the said James Dawson, and that subsequent to his marriage James Dawson sold said land and with the proceeds of the sale purchased the stock in the International Coal & Coke Company mentioned in this complaint, and the other personal and real property mentioned in the second cause of action in said complaint; and prays that the action may be dismissed as to him. Many other matters are set up in the complaint and in the defense of Thomas Dawson which we do not deem relevant to the discussion and determination of the issues involved. A large portion of the briefs of respective counsel, and the oral arguments presented by them, involve the discussion of the question of the special appearance of the defendant Dawson, and whether or not that special appearance was waived by the answer and motion made by defendant Dawson during the trial of the case. The court found certain facts, and from such findings of fact a judgment of dismissal was entered. From that judgment this appeal is taken.

We are at a loss to understand upon what theory the court

dismissed the action as to the Coal & Coke Company, unless it was upon the theory that an action of this kind could only be brought in the jurisdiction which was the home of the holder of these shares of stock, and not in the jurisdiction which was the home of the corporation issuing the stock. The court found that James Dawson, at the time of his death, was a resident of the state of Maryland, and, in effect, that he had lost his residence in the state of Washington. In this finding the court erred. The record shows that Dawson, for some time prior to his leaving Spokane, had been in declining health. He was born and reared in Maryland and returned to that state, thinking that his health might thereby be restored; and it must be confessed that his idea was that, if it was not restored and he continued to decline in health, he would die in his old home in Maryland, and he preferred to die there rather than in Spokane. He stated to some of his friends when he went back to Maryland that he was like a chicken coming home to roost, and, in effect, that he had come home to die among his own friends and relatives. But this is not sufficient to lose to him his legal residence in this state. It is probably a common desire, when sickness overtakes one and death is anticipated, to return to one's native place, and to be surrounded at such a time by old friends and relatives and old scenes and associations. The longing to die in such environment we think is almost universal. And that is about the substance of this case. It is true that, when James Dawson went to Maryland, he fitted up a house on the old farm and moved into it, and when he was able, superintended the work of the farm, which he held in common with his brothers, and even went so far as to buy an acre or so of land adjoining the farm. But his wife testifies, and there is nothing in the record to contradict it, that he did this for the purpose of getting rid of some negroes who occupied a shack upon this small tract of land, as he did not desire to have them in so close proximity to him. It also appears that he furnished the old house and repaired it, spend-

ing a few hundred dollars for that purpose. But this does not necessarily indicate an intention to permanently live in a place. It is common for people when they go to health resorts, to the seashore or elsewhere, to rent and repair, or even construct, cottages and houses to live in; and it was natural that, being there with his wife, he should desire to be comfortable and have at his hand the conveniences of life while he did remain there, whether his health improved or whether the result should be his final dissolution.

It seems to us, from all the evidence in the case, that it was never his intention to abandon his residence in Spokane in case his health should improve. This is evidenced so strongly by a letter written to his old friend, F. E. Langford, that no other conclusion can be drawn than that he had hopes of returning, and intended to return if possible. After inquiring about some unfinished business which he had left in Spokane, the letter proceeds as follows:

"Wish I were back in Spokane. If ever I feel able to stand the confinement of the office again, I shall hike westward sure. So keep a warm place in your heart for me;"

which shows conclusively that he was contemplating a return as soon as it was possible for him so to do. Another circumstance, while not controlling, is indicative. He did not dispose of his real property or of his home in Spokane, but rented the home, together with a portion of the furniture in the house during all the time of his sojourn in Maryland, and had not disposed of it, and there is no indication that he tried to dispose of it, up to the time of his death. Without specially reviewing all the testimony in the case, we are satisfied that he had not lost his residence in Spokane county, and that, when his wife returned to their old home, she had a right to have these shares of stock administered in that jurisdiction, even conceding that it was necessary for the residence of the community to be in Spokane at the time of the commencement of the action.

But as we view this case, the principal and controlling

proposition is as to the situs of these certificates of stock; whether an action concerning them should be brought in the home of the holder of the certificates, or where they are located, or in the jurisdiction where the corporation which issued them is located. The rule is announced by 1 Cook on Corporations, § 12, as follows:

"Legal proceedings against the stock may be initiated at the domicile of the corporation. A claimant of stock in a corporation may institute suit at the place where the company is incorporated for the purpose of obtaining possession of the stock, even though the holders of the stock are nonresidents and are brought into the case only by publication and substituted service. The court acquires jurisdiction over the defendants."

Justice Story, in his Conflict of Laws, said that, "Questions relating to shares of stock are to be determined by the law of the state of the corporation." This is a question relating to the shares of stock; it is a question relating to their ownership, to the dividends accruing, and to the manner of their administration in this particular case; and while shares of stock are personal property, they are none the less an indivisible interest in the corporation. If the property of the corporation is land, then the owner of the shares of stock has an interest in the land of the corporation. If the corporation is dealing in cattle and horses, the owner of the shares of stock has an interest in the value of the horses and cattle, with the management, of course, in the corporation. If it is dealing in mines, the owner of the stock has an interest in the ore which the corporation possesses, and it is an indivisible interest, an interest that reaches to the property of the corporation as a whole and does not reach to any segregated part. But the certificate is simply an evidence of the *pro rata* share, or *pro rata* interest, of the holder of the stock in the whole property of the corporation. Hence, it must appear that the corporation is the essential thing from which the shares issue, and to which the owners of the shares must look for a return on their investment. If this

be true, then constructive notice to a nonresident is sufficient to give jurisdiction, and the ancillary proceeding, such as an attachment, is not necessary in an action of this kind; for the property of the share owner or the holder of the shares, though he be a nonresident, is already within the jurisdiction of the court, and it is the property being within the jurisdiction of the court which is the essential aid to jurisdiction, rather than any particular mode or means by which the property is brought within the jurisdiction. The substituted service, such as was made upon the defendant in this case, thereby becomes a completed service, giving jurisdiction over his person, the *res* already being within the jurisdiction of the court. In this case it is not denied anywhere that the corporation was within the jurisdiction of the court. It is not denied by Dawson, and the corporation itself came into court, submitting itself to the jurisdiction, and asking that the court denominate a proper claimant to these shares. The same authority mentioned above, in § 363, says:

"It is a well established principle of law that shares of stock may, for certain purposes, have a *situs* at two separate places at the same time. For the purposes of suits concerning rights to its title, for taxation, and for a few other purposes, shares of stock follow the domicile of the stockholder. On the other hand, it has at the same time a *situs* where the corporation exists, and this *situs* may be for the purposes of suits concerning title to the stock, for attachment and execution, and for various other similar purposes."

This rule was applied by the supreme court of the United States in *Jellenik v. Huron Copper Min. Co.*, 177 U. S. 1, where it was held that an action could be brought for the purpose of taxing the shares of stock in the state of Michigan where the owners of the shares resided in another state, the court saying:

"The certificates are only evidence of the ownership of the shares, and the interest represented by the shares is held by the company for the benefit of the true owner. As the habitation or domicile of the company is and must be in the

state that created it, the property represented by its certifi-
cates of stock may be deemed to be held by the company
within the state whose creature it is, whenever it is sought by
suit to determine who is its real owner."

This subject is reviewed in *In re Bronson's Estate,* an in-
teresting case from New York, reported in 150 N. Y. 1, 44
N. E. 707, 55 Am. St. 632, 34 L. R. A. 238. That was an
action brought to tax shares and bonds of a certain corpora-
tion in New York, and the court held that there was a dis-
tinction between the bonds of the company and the shares of
stock; that the bonds, which were the property of a non-
resident, could not be taxed, while the shares of stock could;
that the bonds simply represented a debt of the corporation,
while the shares of stock represented the personal property
in the corporation itself, the court saying:

"The attitude of a holder of shares of capital stock is
quite other than that of a holder of bonds, towards the cor-
poration which issued them. While the bondholders are
simply creditors, whose concern with the corporation is lim-
ited to the fulfillment of its particular obligation, the share-
holders are persons who are interested in the operation of the
corporate property and franchises, and their shares actually
represent undivided interests in the corporate enterprises.
The corporation has the legal title to all the properties ac-
quired and appurtenant, but it holds them for the pecuniary
benefit of those persons who hold the capital stock. They
appoint the persons to manage its affairs. They have the
right to share in surplus earnings, and, after dissolution,
they have the right to have the assets reduced to money and
to have them regularly distributed. Each share represents
a distinct interest in the whole of the corporate property;"

citing *Jermain v. Lake Shore etc. R. Co.,* 91 N. Y. 483, 492,
and *Bradley v. Holsworth,* 3 Mees. & W. 422, where it was
held that the share conferred a right to have a share of the
net produce of all the property of the company. Judge Van
dissented from the doctrine of the court that the bonds could
not be taxed, but in a vigorous opinion sustained the doc-
trine that the shares of stock were taxable in the state which

was the home of the corporation. Asking the questions: "What are shares of stock and what rights does the owner thereof enjoy?" the judge said:

"Judge Andrews answered this question when he wrote in *Plimpton v. Bigelow, supra,* that 'the right which a shareholder in a corporation has by reason of his ownership of shares is a right to participate according to the amount of his stock in the surplus profits of a corporation on a division, and ultimately on its dissolution, in the assets remaining after payment of its debts.' Chief Justice Shaw answered it when he said that 'the right is, strictly speaking, a right to participate, in a certain proportion, in the immunities and benefits of the corporation, to vote in the choice of their officers and the management of their concerns, to share in the dividends and profits and to receive an aliquot part of the proceeds of the capital on winding up and terminating the active existence and operations of the corporation.' "

Many cases are cited in the dissenting opinion sustaining this view, but the substance of all the judicial announcements is that the shares represent an undivided interest in all of the property of the corporation, and that the same right exists whether any certificate to the share has been issued or not; that the issuance of the certificate in no wise affects the right of the shareholders. This doctrine does not in any way conflict with the rule announced by this and other courts that the certificates of shares in corporations are assignable property, and that as much protection as is consistent with the character of the property must be afforded to parties who invest their money in paper of this kind. This becomes necessary for the transaction of modern business. But this ownership of purchased certificates must be subordinate to the laws of the state where the corporation exists. Our statute, Rem. & Bal. Code, § 3693, provides that no transfer shall be valid except between the parties thereto, until the same shall have been entered upon the books of the company, so as to show the names of the parties, by and to whom transferred, the names and designation of the shares, and the date of the transfer; and we have held that, in an action by an as-

signee of shares of stock which had been subscribed for by an assignor, a complaint does not state a cause of action when it fails to allege a transfer of the stock upon the books of the company or facts showing the duty of the company to enter the transfer, since it is provided under the statute that such transfer shall not be valid, except between the parties thereto, until the same shall have been entered upon the books of the company. *Lacaff v. Dutch Miller Min. etc. Co.,* 31 Wash. 566, 72 Pac. 112.

In this particular case, there is no danger of any wrong being done to any *bona fide* owners of this stock; for, under the answer of the defendant Dawson, the certificates could go out of the possession of Dawson only by loss or by theft, and in such case the law is plain that the transfer may be made upon the books of the company upon a proper showing. The corporation will be protected because, under the general rule, a corporation should not cancel the certificate of stock and issue other certificates in lieu thereof except upon an indemnity bond, for the reason that the owners of the shares of the stock could hold them responsible. They are not held responsible where the corporation is compelled to make a registry by legal proceedings. In such case, they cannot be held liable to the holders of the outstanding certificate. 2 Cook, Corporations, § 361. Such being the law, the constructive notice which was given to defendant Dawson brought him within the jurisdiction of the court; and from the whole case, it is manifest that the shares of stock are subject to administration in this state, and should be turned over to the possession of the administrator in Spokane county, and that the defendant corporation should account to the owner of the stock for the dividends which have accrued upon said stock.

The judgment will therefore be reversed, and the court will enter a judgment against Dawson, commanding him to turn over said certificates to the appellant, the administrator of Dawson's estate in this state, where the question of heir-

ship or who is entitled to succeed to the possession and interest of the decedent Dawson in the estate may be determined; and the judgment of the court will also be that the defendant corporation shall, in case said shares of stock are not returned, cancel the same, and issue a certificate in lieu thereof to whomsoever is determined by the superior court of Spokane county to be entitled thereto.

CROW, ELLIS, and MORRIS, JJ., concur.