(Nos. 19520, 19521, 19522.)
JOSEPH HARRIS, Plaintiff in Error, *vs.* THE CHICAGO TITLE AND TRUST COMPANY, Admr., *et al.* Defendants in Error.

*Opinion filed February 21, 1930.*

POPPENHUSEN, JOHNSTON, THOMPSON & COLE, (FLOYD E. THOMPSON, of counsel,) for plaintiff in error in Supreme Court only.

TOWNLEY, WILD, CAMPBELL & CLARK, (MORRIS TOWNLEY, of counsel,) also for plaintiff in error.

COOKE, SULLIVAN & RICKS, ALDEN, LATHAM & YOUNG, CHAPMAN & CUTLER, and CHARLES MARTIN, (GEORGE A. COOKE, WILLIAM T. ALDEN, and CHARLES M. THOMSON, of counsel,) for defendants in error.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is here by writ of *certiorari* to the Appellate Court for the First District to review its judgment entered therein.

Plaintiff in error in April, 1927, filed a bill in the circuit court of Cook county seeking a decree declaring him to be the owner of 3750 shares of stock of the Addressing Machines Securities Company, a Delaware corporation, hereinafter referred to as the Securities Company. In order to understand the issues presented it is necessary to set out at considerable length the various bills and supplemental bills filed herein.

The original bill was filed against John B. Russell, a resident of Pennsylvania, and alleges that prior to August 1, 1923, complainant and defendant had for a number of years been close personal friends, had associated together in numerous business transactions; that the relationship between them was one of trust; that complainant told Russell that he had secured an option to purchase of one Joseph S. Duncan his stock in the Addressograph Company, an Illinois corporation engaged in the manufacture of addressograph machines; that Duncan owned one-half of the stock in that company and one David Hall and certain members of his family owned the other one-half, and that Duncan was desirous of retiring from business and wished to sell his stock. The bill also alleges that the Addressograph Company was at that time making net earnings of

approximately $700,000 annually and had a large surplus, including approximately $400,000 in cash and $1,350,000 invested in United States bonds; that complainant learned that Duncan was willing to sell his stock for approximately $2,500,000, and that complainant also learned, in considerable detail, the financial condition of the Addressograph Company and concluded that the stock owned by Duncan had a value substantially in excess of the price asked by him for it. The bill further alleges that complainant procured from Duncan an option to purchase the stock, which option was dated April 20, 1923, and expired August 1, 1923; that the complainant did not have the means to purchase the stock but considered the option of great value and hoped to find someone willing to advance the money to purchase same, saving to himself a substantial interest therein; that he approached the defendant with the view of obtaining his assistance in this project; that he told defendant what he had learned with reference to the condition of the Addressograph Company and the value of the stock and proposed to the defendant that all profits realized from the transaction be divided between complainant and defendant, share and share alike, and that defendant agreed to this proposal. It is alleged that they thereupon embarked on a partnership or joint adventure with a view to capitalizing for their mutual profits the option which complainant had procured from Duncan; that as a result of this arrangement numerous conferences were had, in which the complainant disclosed to defendant that the large surplus, amounting to approximately $2,000,000, was not needed as working capital, and if authorized by the directors of the company a dividend could be declared which might be used to make substantial payments to Duncan on the stock covered by complainant's option; that, pursuant to the suggestion of defendant, complainant and his son, Stanford Harris, conferred with David Hall with the view of carrying out the proposed plan and that said Hall indicated that

it was agreeable to him. The bill alleges that the defendant informed complainant that he had submitted the project to certain of his friends and business associates, namely, Frank H. Woods, of Lincoln, Nebraska, and Perley Morse, of New York City, and that he believed Woods and Morse would join in purchasing the stock; that it was thereupon agreed that if Duncan's stock was purchased by Russell, Woods and Morse, complainant would not be required to advance any part of the purchase price but that the purchasers would carry complainant for one-fourth interest in the stock until the Addressograph Company was reorganized or until the stock had been disposed of, and that it was agreed between complainant and defendant that if the stock in question were purchased by the defendant and his associates, complainant should become and remain the equitable owner of one-fourth thereof, subject to a lien or charge equal to one-fourth of the total amount of the purchase price, including interest at legal rate, complainant to be entitled to all dividends and profits that might be realized on the stock equitably owned by him; that in consideration of this agreement on the part of defendant the complainant agreed to modify, and did modify, his prior agreement with the defendant relative to the division of profits and agreed that he would take no steps to find any other purchaser, and that defendant agreed that if he and his associates purchased the stock, he, defendant, would inform his associates of the equitable interest of the complainant and would bind and obligate his associates to respect such interest. The bill also charges that on August 1, 1923, complainant's option for the purchase of the stock expired and defendant thereupon urged him to procure a renewal of the same, which he did, the option being renewed to September 15, 1923, whereupon defendant and his associates employed auditors and procured the books of the Addressograph Company to be audited. It is also alleged that although various meetings were held with the

defendant and his associates the matter was not consummated by September 15 but defendant arranged a meeting between Duncan and himself early in September, at which time defendant procured from Duncan an extension of the option expiring September 15, which extension was in the form of a new option running to the defendant; that complainant was advised of this new option but acquiesced therein because of defendant's promises in the matter and because of the relationship and trust and confidence which existed between them, and that in subsequent conferences defendant recognized that complainant's interest in the transaction was in nowise affected by any new option. The bill also alleges that defendant, Russell, and Woods and Morse, purchased the stock from Duncan for $2,500,000; that from time to time thereafter complainant requested the defendant to give him an account of the profits which might be due him and to execute a writing indicating the exact character of complainant's interest; that in 1927 complainant demanded of the defendant such an accounting or writing, and was thereupon for the first time informed by defendant that he, the complainant, had no interest in the shares of stock and that the option taken by defendant from Duncan on or about September 15, 1923, was taken for the exclusive benefit of defendant and his associates and complainant had no interest therein. The bill charges that such conduct on the part of defendant constitutes a breach of contract and a breach of trust; that the relationship existing between complainant and defendant was that of partners in joint adventures and was a confidential relationship, and that, irrespective of the promises made by the defendant to the complainant, the defendant is not permitted in equity to use the information acquired for his own benefit and to the grantor's detriment but that the option running to the defendant was for the benefit of complainant, in accordance with their previous understanding. It is charged in the bill that in the pur-

chase of the stock defendant violated his agreement with the complainant by failing to inform his associates concerning complainant's equitable interest in the shares and concerning the agreement between complainant and defendant; that complainant is informed that the defendant and his associates have caused to be organized a corporation under the laws of Delaware to act as a holding company for the shares as purchased by them from Duncan, and that all such shares have been transferred to the holding company in exchange for shares of the holding company issued to the defendant and his associates. The bill prays that a decree be entered declaring that the defendant holds in trust one-fourth of the shares of the Addressograph Company purchased by defendant and his associates from Duncan subject to conditions of payment by the complainant of his share of the purchase price, and if it be found that the shares had been transferred to a holding company, that equity may follow such shares and declare and establish a trust with respect either to the original shares or the shares of the holding company issued in lieu thereof, and that the defendant be required to account for all dividends and profits arising therefrom.

This bill was answered by defendant, who denied the material allegations thereof and alleged that the purchase was made by himself and his associates on information procured by them and without any agreement on the part of the defendant that the complainant should have any interest in the stock when purchased.

On October 15, 1927, an amended supplemental bill was filed by plaintiff in error, reciting that the corporation which the bill charges was created by Russell and his associates is a Delaware corporation and is incorporated as the Addressing Machines Securities Company; that it was organized as a dummy corporation for the purpose, only, of holding the shares of stock of the Addressograph Company; that it gave no consideration to Russell and his as-

sociates for the Addressograph Company stock and took the same with knowledge of complainant's interest; that subsequent to the filing of the original bill the Addressing Machines Securities Company, referred to as the Securities Company, purchased from David W. Hall one-half the capital stock of the Addressograph Company, as result of which purchase it owned the entire capital stock of the Addressograph Company; that the purchase price paid by the Securities Company to Hall was approximately $4,000,-000; that a cash dividend of $5000 per share was made of the Addressograph Company's stock, which was used by the Securities Company to pay the balance of the purchase price of the Addressograph Company stock previously purchased from Duncan and applied in part toward the payment of the Addressograph Company stock which had been purchased from Hall; that thereafter Russell and his associates organized another corporation under the laws of Delaware, known as the Addressograph Company, (referred to as the Delaware Addressograph Company,) for the purpose of taking over the business and assets of the Addressograph Company of Illinois, and that the business and assets were set over to the Delaware Addressograph Company and certain debentures were thereupon issued, and that as a result of the transaction Russell and his associates had, either directly or through the Securities Company, taken from the Addressograph Company of Illinois a total of $5,500,000, together with large blocks of stock which had been allotted to them. This supplemental bill also charges that Russell is a resident of Pennsylvania and has no assets in Illinois except such as he may receive from this stock, and prays that the Harris Trust and Savings Bank of Chicago, pledgee of Russell's Securities Company stock, the Addressograph Company, an Illinois corporation, the Addressograph Company, a Delaware corporation, the Addressing Machines Securities Company, a Delaware corporation, be made parties and required to an-

swer, under oath, certain interrogatories filed with the supplemental bill and made a part thereof, and that a temporary injunction issue restraining further transfer or delivery of the stock until further order of the court or the paying over of any dividends or sums of money until further order of the court, and enjoining Russell from removing from the State of Illinois any sums of money or securities which he may be entitled to receive in the transactions arising out of the Addressograph stock.

A demurrer to this supplemental bill was filed by the Harris Trust and Savings Bank, and the answer of the defendant, Russell, was filed thereto. The Addressing Machines Securities Company also filed a demurrer. It does not appear from the abstract whether service was had on the Addressograph Company of Illinois and the Addressograph Company of Delaware.

The cause came on for hearing before the chancellor. On October 28, 1927, during the hearing, defendant, Russell, died, and on November 25, 1927, the plaintiff in error filed a petition reciting the death of Russell; that Joseph E. Russell and John B. Russell, Jr., were appointed his executors, and on November 18, 1927, filed their petition in the probate court of Cook county to probate the will of John B. Russell and that letters of administration with will annexed be issued to the Chicago Title and Trust Company; that on November 18, 1927, the probate court admitted the will to probate and issued letters of administration to the Chicago Title and Trust Company, which was duly qualified as such. The petition prays leave to amend complainant's bill, making the Chicago Title and Trust Company, administrator with will annexed, party defendant. This leave was granted, and on November 30, 1927, plaintiff in error filed another amended bill, alleging facts in substance as hereinbefore set forth. This amended bill prays a decree declaring that the Chicago Title and Trust Company, as administrator with will annexed, holds in trust

for the complainant one-fourth of the Addressograph Company stock purchased by Russell and his associates, subject to the conditions set forth in the bill, and that the stock had been transferred to a holding company; that equity follow such shares and establish a trust with respect to either the original shares or those issued in lieu thereof, and that the Chicago Title and Trust Company account for the profits. This amended bill appears to have been filed against the Chicago Title and Trust Company as administrator with will annexed, and that defendant answered denying the material averments of the amended bill, and denied that it had in its possession any stock of the Addressograph Company or any holding company.

Thereafter, on completion of the hearing but prior to the entry of the decree, plaintiff in error filed a second amended supplemental bill against the Chicago Title and Trust Company, administrator with will annexed, the Securities Company and the Harris Trust and Savings Bank, alleging that Russell died holding 7500 shares of stock in the Securities Company which he received in exchange for his interest in the stock of the Addressograph Company; that during his lifetime he endorsed the certificates for these shares and delivered them to the Harris Trust and Savings Bank, defendant, to secure an indebtedness of $80,000; that the certificates are in Chicago in possession of the bank; that the Securities Company is a Delaware corporation licensed to do business in Illinois, maintaining an office in Illinois and keeping its transfer books there. It is alleged that the firm of attorneys appearing for the Pennsylvania executors appeared also for Russell during his lifetime and in the matter of procuring the appointment of an Illinois administrator, which they also represent; that during the trial the Pennsylvania executors were present and assisted the defense; that during the trial there was no contention that the shares of the Securities Company were not owned by the Illinois administrator, but after the chan-

cellor announced his findings and directed the preparation of a decree the defendant took the position that the stock of the Securities Company had no situs in Illinois. It is also alleged that the shares of the Securities Company held by Russell are worth approximately $1,000,000; that one-half of such stock is more than sufficient to pay Russell's indebtedness to the bank and that the defendant administrator is estopped to deny the Illinois situs of the shares of the Securities Company; that, regardless of the question of the legal situs of the stock, the certificates endorsed by Russell are in the possession of the bank, and the filing of the supplemental bill constituted an equitable levy on the stock and brought the same into the jurisdiction of the court. The complainant prays under this second amended and supplemental bill that the bank be required to offer for sale the 3750 shares of stock owned by the estate of Russell, and, if sufficient is realized to pay the indebtedness, the remaining 3750 shares equitably owned by the complainant be delivered by the bank to the Illinois administrator and by it to complainant; that the bank be enjoined from making any disposition of the shares except as authorized by the decree, and that the Illinois administrator be required to hold these shares and dispose of them in accordance with the final decree of the court, and that if the bank is unable to obtain satisfaction out of the stock owned by the estate of Russell, complainant be permitted to redeem. The following is also included as a part of the prayer of this amended and supplemental bill: "If the court shall be of the opinion that said shares of stock held by the bank are not within the jurisdiction of the court and are not subject to any decree which this court may make, then, in the alternative, complainant prays that the cause may be re-opened for the purpose of enabling complainant to impress with a trust in his favor the shares of the Addressograph Company originally acquired by Russell and transferred to the Securities Company, and complainant

represents that at the time the sole owners and officers of the Securities Company were Russell, Woods and Morse, and that Russell and Morse knew of complainant's interest in said stock and Woods had knowledge of such fact as to import knowledge of such interest, and that for this and other reasons the Securities Company took the stock of the Addressograph Company with actual or constructive notice of the complainant's interest and that the Securities Company did not pay value for the same."

The Harris Trust and Savings Bank demurred to this supplemental bill. The Chicago Title and Trust Company answered the same, denying the complainant's right to the relief prayed. The demurrer of the bank was overruled and a decree was entered by the circuit court finding that a joint adventure existed between Russell and the complainant by which the complainant was to reimburse Russell for one-half of any sums advanced by him for the stock and complainant was to have one-half interest therein. The decree finds that the complainant is the equitable owner of 3750 shares of the Securities Company stock received by Russell in place of the 82 shares of the Addressograph stock transferred to the Securities Company. It was further decreed that in event of the payment of the indebtedness due from the Russell estate to the Harris Trust and Savings Bank within thirty days of the decree the bank may turn over to the estate all securities in its possession as collateral except certificates representing 3750 shares of the Securities Company stock, which it shall then deliver to the administrator with will annexed, whereupon the administrator is required by the decree to receive such certificates and deliver them to the complainant and is enjoined from making any other disposition thereof, and the Securities Company is required by the decree to receive such certificates and transfer them upon the books to the complainant. It is further decreed that in case the indebtedness to the bank was not paid by the estate in thirty days, the bank, after

notice to all parties, shall offer for sale, pursuant to the terms of its collateral agreement, all securities it has in its possession for the payment of indebtedness except the 3750 shares of the Securities Company stock equitably owned by the complainant, and if upon such selling a sufficient sum is realized to pay the indebtedness and costs, then the certificates for 3750 shares are to be delivered by the bank to the administrator, to be transferred to complainant on the payment to the administrator of $30,000 as complainant's share of the cost of the stock, plus one-half of a loan of $12,500 advanced as a loan to the Securities Company, and complainant is subrogated to the rights of Russell to recover from the Securities Company the sum of $6250 as one-half of said loan. It is further decreed that if the 3750 shares of stock equitably owned by the complainant are offered for sale and the highest bid is not sufficient to pay the indebtedness to the bank, then the bank shall not accept the bid but shall reject all bids and notify the complainant, who shall be permitted to make redemption within ten days of such notice. Failing in this, the bank may sell all securities for the payment of the indebtedness.

The three defendants took separate appeals to the Appellate Court for the First District, which were there consolidated. That court reversed the decree on the ground that the admissible testimony found in the record is insufficient to support the decree of the chancellor, and on the further ground that the circuit court erred in holding that the situs of the stock of the defendant Securities Company is in Illinois, and held that the same did not vest in the administrator with will annexed, and that the chancellor erred in overruling the demurrer of the bank to the second amended and supplemental bill; that the circuit court had no jurisdiction to make any order or decree regarding the ownership of this stock or order distribution. The decree was reversed and the case remanded,

with directions to dismiss the bills before it for want of jurisdiction.

Most of the points arising under the question of jurisdiction in this cause were settled in *Martin* v. *Central Trust Co.* 327 Ill. 622. That case is very similar on the facts. One S. K. Martin was a resident of New York. He died there. His will was duly probated and his brother, W. B. Martin, of Illinois, appointed executor. At the time of his death Martin owned real estate located in Cook county, Illinois, and had in his lifetime endorsed in blank and delivered to the Central Trust Company, as collateral security for his note in the sum of $35,000, various securities, among which were certain certificates of stock in certain Delaware holding corporations. W. B. Martin and the Central Trust Company were appointed co-ancillary executors in Illinois. The stock pledged to the Central Trust Company was inventoried by the New York executor in New York and was there subjected to Federal and State inheritance taxes. In preparing the inventory of property in Illinois the Central Trust Company was of the view that the stock in the Delaware corporations should be included. W. B. Martin, New York executor and co-ancillary executor in Illinois, was of the opinion that the situs of the stock of the Delaware corporations was not in Illinois, where the certificates happened to be, and did not constitute assets in Illinois. The question arising in the case, therefore, was whether these certificates of stock should have been inventoried as property in this State, and that issue was squarely decided in that case. It was there held that certificates of stock are merely the paper representations of incorporeal rights which the decedent had to the stock in the corporations; that the act of subscribing for the shares gave him title to them, and the certificates merely afforded him evidence of his right and stood on the same footing as other muniments of title, and that the certificates of stock had no situs in Illinois and should have

been omitted from the inventory to be filed by the co-ancillary executors. It was argued in that case, as here, that since the corporations issuing the stock in question transacted all of their business and maintained their office and transfer agent in Illinois, the company should be considered in Illinois for the purpose of determining the situs of the stock. It was held, however, that the situs of stocks of a corporation is in the State of its incorporation, and that this rule is not affected by the fact that its business offices are located and conducted in another State where its books and records of transfers are kept.

It is argued that the administrator with will annexed, and the Pennsylvania executors, the latter of whom are not parties to this suit, are estopped to question the jurisdiction of the circuit court of Cook county over the stock in possession of the Harris Trust and Savings Bank, because the administrator with will annexed was appointed at the instance of the Pennsylvania executors and the latter were actively engaged in the defense of this lawsuit in that court. The Pennsylvania executors were not parties to this proceeding and cannot be made such by their presence in court. The answer of the administrator with will annexed is that it did not hold any shares of stock in which plaintiff in error had an interest. The *Martin case,* in which a like question of estoppel was raised, decides that issue against the contention of plaintiff in error here.

It is argued that since plaintiff in error claims to be the owner of one-half the stock, the question of the ownership thereof should be passed upon before the determination of its situs; that in equity the *cestui que trust,* although without legal title, is the real owner, and the question whether plaintiff in error in this case is *cestui que trust* must be decided before the situs of the stock can be determined. The bill is bottomed on the proposition that Russell took the legal title to the stock under an agreement with plaintiff in error that he would transfer one-half to

him, and that he therefore holds one-half such stock in trust for plaintiff in error. The decree so finds and directs the transfer of one-half of the stock to him. Under the holding in the *Martin case,* where the stock was likewise pledged, it must be held that the legal title to this stock, even if impressed with such a trust, vested, on the death of Russell, in his executors in Pennsylvania, and under the fundamental principle of due process requiring that rights of parties may not be adjudicated unless they are in court, with an opportunity for a hearing, the legal title to one-half of this stock cannot be taken from the Pennsylvania executors without making them parties to the suit. This was not done.

It is also argued that a distinction exists between this case and the *Martin case* as to the question of the situs of the property involved; that in the latter case no question of ownership was raised while in the case before us such a claim is asserted by plaintiff in error, and that therefore the holding in the former case as to the situs of the property and as to the jurisdiction of the co-ancillary executors over such property is not applicable. In other words, counsel seek to use the existence of plaintiff in error's claim of ownership as the logical premise from which the conclusion is to be drawn that the situs of this property is in Illinois and therefore the court had jurisdiction to hear the cause and enter a decree finding that such claim of ownership is valid,—that is, the assumption that his claim of ownership is well founded is to be made the jurisdictional ground on which the court could, and properly did, proceed to a determination of the validity of such claim and the distribution of the *corpus,* for, unless it be assumed that this claim is well founded, the situs of the property involved is not shown to be in Illinois and jurisdiction does not appear. It is thus sought to use the asserted validity of plaintiff in error's claim to prove jurisdiction in the court to hold it so. Such a conclusion can neither follow logically

nor legally. The existence of a claim of ownership, subject as here asserted, cannot be made the basis for determining the situs of the property involved. If this could be done, a claim of ownership, however fictitious, would give to property a situs different from that given it by the law, with opportunity for collusion between a local administrator and such fictitious claimant, to the detriment of the estate involved.

In *Baker* v. *Baker, Eccles & Co.* 242 U. S. 394, the Supreme Court of the United States reviewed the judgment of the Court of Appeals of Kentucky on the following facts: Baker died intestate. His widow, living in Tennessee, was there appointed administratrix. Among his assets were real estate and personal property in Tennessee and certificates of stock of a Kentucky corporation in his possession in Tennessee. Under the law of that State all personal property passed to the widow, there being no children. Under the law of Kentucky, where the mother resided, one-half, under such facts, passed to the widow and one-half to the mother. The mother was appointed administratrix in Kentucky and filed a petition for the settlement of the estate of her son, making as defendants the corporation which had issued the stock, and the widow. Notice by publication was given the widow and a decree entered in the Kentucky court finding that the decedent died a resident of Kentucky and directing the corporation to re-issue the stock, one-half to the mother and one-half to the widow. The widow in the meantime had procured in Tennessee a distribution of the entire estate to herself, including the stock of the Kentucky corporation. She filed a bill in chancery in Tennessee against the mother and others for a decree holding that she was the owner of the stock involved. She complied with the Tennessee statute in regard to notice to non-resident defendants but the mother did not appear. The Tennessee court entered a decree finding that the property, including the stock, be-

longed to the widow. The widow thereafter filed in Kentucky a bill to require the corporation to issue new certificates to her. The mother intervened and set up her claim for one-half the stock. The lower court dismissed the suit. The Kentucky Court of Appeals (162 Ky. 683,) held that the decree of the Kentucky court in the case instituted by the mother was not binding on the widow because of the failure to make proper substituted service, and second, that the decree of the Tennessee court was not binding on the mother as to property that was not located in Tennessee. It was held that the Tennessee court had jurisdiction and the Tennessee statutes regarding service on non-residents had been complied with and the decree was entitled to full faith and credit in all other States as to property located in Tennessee, but that it was beyond the power of the Tennessee court to enter a decree determining the ownership of the stock of the Kentucky corporation since that stock had its situs in Kentucky, notwithstanding the certificates were in the possession of the administratrix in Tennessee. The Kentucky Court of Appeals also held that the decedent was a resident of Kentucky, and directed the stock and other property having situs in Kentucky to be divided equally between the widow and the mother according to the Kentucky statutes of descent. The judgment of the Kentucky Court of Appeals was affirmed by the United States Supreme Court. The question in that court was whether the Kentucky court was bound to give full faith and credit to the Tennessee decree in so far as it affected property located in Kentucky. It was held that it was not required so to do; that as to property in Kentucky the service upon the mother was not due process of law; that to hold one bound by a judgment who has not had an opportunity to be heard is contrary to the first principles of justice. It will be noted that although the stock certificates of the Kentucky corporation were in the possession of the administratrix in Tennessee and administration thereof attempted in

that State, yet it was held that the situs of the corporate shares represented by the certificates was in Kentucky and not in Tennessee. In that case there was a claim not merely of equitable ownership by the widow but also of the legal title to the stock.

For the reasons we have given we are of the opinion that the claimed distinction between this case and the *Martin case* does not exist, and the fact that there is here a claim of equitable ownership by plaintiff in error cannot affect the situs of the property.

It is, in effect, argued that the *Martin case* is in conflict with *Direction der Disconto-Gesellschaft* v. *United States Steel Corp.* 267 U. S. 22. It is argued that the effect of the holding in the *Steel Corporation case* must be that the situs of stock exists where the certificates of stock are found. In that case certificates of stock issued by the United States Steel Corporation, a New Jersey corporation, were in the possession of the plaintiff, a German corporation. During the period in which England was at war with Germany the public trustee, an English corporation sole, acting custodian of enemy property, seized the certificates of stock for 100 shares of the United States Steel Corporation in the office of the German corporation in London, and in the courts of this country sought to be declared the owner of this stock and to have new certificates issued to it by the steel corporation on surrender of the certificates in the possession of the English public trustee. Other certificates of this stock had been issued to the Bank für Handel, a German corporation, and pledged by it with an English house. These were also seized by the English public trustee and were involved in the same proceeding. Under the laws of England the public trustee by seizing the certificates in London became vested with the rights of the German holders of the certificates of stock in and to the shares represented by such certificates, and the Supreme Court of the United States held in that case that the own-

ership of the certificate of stock must be held to depend on the law of the place where the paper is, and that since under the English law the things done in England transferred the title to the public trustee and the United States government saw no reason to take steps to assert a paramount power, the English public trustee by the original seizure secured a good title to the stock as against the German corporations and was entitled to have the certificates re-issued in its favor. This is far from holding that were the question of title to the property raised under the Federal or a State law it would be held that the situs of stock is where the certificates may be found. It is a holding that since under the English law the English public trustee acquired good title, that title would be recognized in a controversy between two individual claimants thereto. Under the rule in this State and elsewhere, a person becomes a stockholder in a corporation by subscribing for stock, paying the amount to the company or its proper officer and being entered on the stock book as a stockholder. He may take out a certificate or not, as he sees fit. A certificate is authentic evidence of title to stock, and under the Uniform Stock Transfer act title to the stock may be transferred by the endorsement and transfer of the certificate where such is the intention of the parties, but the certificate merely certifies to a fact which exists independent of such certificate. (*Martin* v. *Central Trust Co. supra; Wemple* v. *St. Louis, Jacksonville and Springfield Railroad Co.* 120 Ill. 196; *Pacific Nat. Bank* v. *Eaton,* 141 U. S. 227.) The holding in the *Martin case* as to the situs of corporate stock is adhered to. That case is in accordance with the greater weight of authority in this country. *Jellenik* v. *Huron Copper Mining Co.* 177 U. S. 1; *Buck* v. *Beach,* 206 id. 392; *Holmes* v. *Camp,* 219 N. Y. 359, 114 N. E. 841; *Bouree* v. *Trust Francais,* 14 Del. Ch. 332, 127 Atl. 56; *Kennedy* v. *Hodges,* 215 Mass. 112, 102 N. E. 432; *Murphy* v. *Crouse,* 135 Cal. 14, 66 Pac. 971; *Gamble* v. *Dawson,*

67 Wash. 72, 120 Pac. 1060; *Warrior Coal and Coke Co.
v. National Bank,* 53 So. (Ala.) 997; 4 Thompson on Corp.
(2d ed.) sec. 3471.

Counsel for plaintiff in error earnestly argue that since
in the lifetime of John B. Russell the court secured juris-
diction of him it also secured jurisdiction of the stock, the
certificates to which were by him pledged with the Harris
Trust and Savings Bank, and that having so secured juris-
diction it was not deprived thereof by the death of Russell.
This was originally an action against Russell. When Rus-
sell died the court lost jurisdiction of him, and in such a
state of the record was without power to proceed to a de-
cree requiring that he convey property or to any other de-
cree. In order to revive the action and re-vest the court
with jurisdiction to proceed to a decree some act was re-
quired to be done. This act was a substitution of someone
in his stead. Such a person must be capable of represent-
ing his estate for the purpose of the suit. This was a
bill seeking a decree for the transfer of property *in specie.*
The revival of this suit by the substitution of the local
administrator could not afford a basis of jurisdiction for
such a decree unless the administrator had or could have
control over such property.

Counsel argue that the death of Russell did not abate
the suit but merely suspended it; that if a decree had been
rendered against him in his lifetime it could have been en-
forced against him, and against his estate after his decease,
though the proceeding was, on his death, in what has been
characterized as a state of suspended animation; that the
court therefore had jurisdiction of the subject matter, and
when the Illinois administrator was substituted the revival
was complete. The validity of the decree in this case must
depend on the proceedings following the death of Russell.
On his death the jurisdiction of the circuit court of Cook
county was not entirely destroyed but was suspended until
his proper representative, for the purposes of the suit, was

made a party. The Illinois administrator was made a party and appeared, but it was not the general representative of the estate and could not bind it by any appearance or action other than in respect to property over which it could exercise control. (*Brown* v. *Fletcher's Estate*, 210 U. S. 82.) The proceeding in this case is to recover property *in specie* not in possession or under the control of the Illinois administrator. The substitution of such administrator, therefore, did not bring Russell's general estate into court.

In *Brown* v. *Fletcher's Estate, supra,* action was brought in Massachusetts against a resident of Michigan, who was personally served and appeared and defended the suit. During the pendency of the proceedings, Fletcher, the defendant, died. His will was admitted to probate in Michigan. He owned some real estate in Massachusetts and his will was likewise probated in that State. An administrator with will annexed was appointed there and was substituted as defendant in the Massachusetts suit. The Massachusetts court ordered the executors in Michigan and the heirs and residuary legatees to be notified and to appear, and such notice was given. They did not appear, but a decree in favor of the complainant was entered finding the Michigan executors bound by the provisions thereof and that they were liable to pay certain sums of money. That decree was affirmed by the Supreme Court of Massachusetts and was thereafter filed in the probate court of Michigan as a claim against Fletcher's estate. The claim was disallowed and on appeal the order of disallowance was affirmed. (146 Mich. 401, 109 N. W. 686.) A writ of error was sued out of the Supreme Court of the United States to review the judgment of the Michigan court. It was there held that as the Massachusetts administrator was not a general representative of the estate he could not bind it by appearance in any action there other than in respect to property in his custody; that to bind the estate as to other property the home representatives must be parties to the proceeding, and the

suit in the Massachusetts court did not operate to make such representatives parties thereto and did not bring the decedent's general estate into court. It was there said: "It must be held that the proceeding in the Massachusetts court abated with the death of Mr. Fletcher; that its revival was possible only because there was brought into existence by the exercise of the sovereign power of the State a representative of the decedent clothed with certain powers with respect to the estate of the decedent within the State, and that the decree thereafter rendered in the suit so revived is without effect save upon the administrator of the estate, who was, in accordance with the law of the place, brought upon the record."

We are of the opinion, therefore, that the revivor by substitution in this case did not give the court jurisdiction over any portion of the estate not located in Illinois and under jurisdiction of the Illinois administrator. On the death of Russell the legal title to these shares of stock vested in his Pennsylvania executors and they were inventoried there as a part of his estate. The decree entered here would not be binding on them without making them parties to the proceeding and could not take from them their title and vest it in another. It follows that the beneficiary of such a decree would not acquire title to the property, and the decree therefore was not such as could command full faith and credit under the comity relation of States. (*Baker* v. *Baker, Eccles & Co. supra; Brown* v. *Fletcher, supra.*) When Russell died there was no one before the court who could be compelled to transfer the stock in accordance with the decree, and the decree could avail plaintiff in error nothing.

It is also argued that when Russell endorsed the certificates of stock in blank and placed them with the defendant bank as collateral he transferred the property in the stock to the bank and the stock thereby came within the jurisdiction of the court. Possession by a pledgee of cer-

tificates of stock endorsed in blank, when held for the purpose of security or pledged for a loan, does not vest the legal title to the stock in the pledgee but gives him a special property right in the thing pledged. The general property or title in the stock remains in the pledgor, subject to the rights of the pledgee, until the pledge is foreclosed in accordance with the terms of the pledge agreement or discharged. This has long been the rule in Illinois. (*Boulter* v. *Joliet Nat. Bank,* 295 Ill. 594; *Allmon* v. *Salem Building Ass'n,* 275 id. 336; *Union Trust Co.* v. *Rigdon,* 93 id. 458.) This is also, in effect, the holding of *Martin* v. *Central Trust Co. supra.* This contention cannot be sustained. These points dispose of the decree entered, and consideration of other points affecting it is unnecessary.

It is also urged that the actual transfer by Russell of the 82 shares of the Addressograph Company stock to the Securities Company having taken place on May 5, 1927, after the filing of the original bill herein, such transfer occurred *pendente lite,* and the Securities Company thereby had notice of the pendency of this suit and took the shares of the Addressograph Company stock subject to the interest of the plaintiff in error therein, and that under the averments of the second amended and supplemental bill plaintiff in error, as complainant, had a right to have the case opened to amend his bill and present evidence to impress the Addressograph stock with a trust in the hands of the Securities Company in case the court was of the view that the Securities Company stock had no situs in Illinois; that while the circuit court held it did have such situs, the Appellate Court, on holding to the contrary, should have remanded the cause with leave to plaintiff in error to amend his bill and offer proof, and that it erred in not so doing. Defendants in error assert that the transfer of this stock occurred on August 7, 1924, at the time the original assignment was made to the Securities Company. Without settling that dispute, it is evident from the averments of

the second amended supplemental bill, which was filed after the hearing and after the chancellor had indicated the character of decree he would enter, that it neither charged the taking of the stock *pendente lite* nor afforded basis for opening the proceedings, were the court otherwise justified in so doing. The prayer of the second amended and supplemental bill in this particular is that "the cause may be reopened for the purpose of enabling complainant to impress with a trust in his favor the shares of the Addressograph Company originally acquired by Russell and transferred to the Securities Company." The averments supporting this prayer are, that at the time of such transfer "the sole owners and officers of the Securities Company were Russell, Woods and Morse, and that Russell and Morse knew of complainant's interest in said stock and Woods had knowledge of such facts as to impart constructive knowledge of such interest." This prayer does not, as counsel now argue, seek leave to amend. If it did, such privilege could scarcely be claimed at that stage of the proceeding without submitting with such prayer the amendment proposed to be filed. It seeks, on the condition there. stated, an opportunity to make proof of certain facts alleged therein. Nor does this supplemental bill charge a transfer of the Addressograph stock *pendente lite*. It makes no allegation as to when the transfer took place, and it is not argued that if this stock was transferred in 1924, as claimed by defendant in error, it was nevertheless transferred *pendente lite*. It· is alleged in the bill that Russell transferred the Addressograph stock to the Securities Company and received in return therefor 7500 shares of the Securities Company stock. It was stipulated on the hearing that on January 13, 1927, before the filing of the original bill, Russell pledged this stock to the Harris Trust and Savings Bank. This Securities Company stock is the subject matter of plaintiff in error's original claim. It will be noted that there is in the alternative prayer of the second amended and supplemental bill no prayer

to have the Addressograph Company stock transferred to plaintiff in error or to sell or make disposition of it as is prayed concerning the Securities Company stock. There is no question that at the time Russell died, in 1927, the transfer of the Addressograph Company stock to the Securities Company had been completed, or that on January 13, 1927, the Securities Company stock which he had taken in exchange therefor was pledged to the bank. There was therefore no Addressograph Company stock held by the defendant bank which could come into the hands of the administrator in Illinois, and, so far as these defendants, the pledgee bank and the administrator are concerned, no decree of this character so prayed could be entered on the allegations of the second amended and supplemental bill. Nor would such allegations justify a decree affecting the right of the defendant bank to its interest in the Securities Company stock in its possession as pledgee. Even though it be said that Russell transferred the Addressograph Company stock impressed with a trust, and the Appellate Court finds on the merits that no such trust exists, the circuit court would not, on remandment, under the allegations of the said supplemental bill, be authorized to deal with or order transferred such stock. Nor do the allegations of this supplemental bill amount to an averment that the Addressograph Company stock is the property of the Russell estate located in Illinois to which the local administrator could take title. The prayer of this supplemental bill was not such as required the Appellate Court, on reversal of the decree, to remand the cause for the purpose of opening it up to let in proof.

The Appellate Court did not err in reversing the decree and remanding the cause with directions to dismiss the bills, and its judgment is affirmed. *Judgment affirmed.*